715 P.2d 739

Michael MONGAN, Kathryn Getzwiller, Janet Hagen, Pearl Dale Back, Carlos D. Matrecito, and Michael A. Carson, Petitioners/Appellants,

v.

PIMA COUNTY SUPERIOR COURT of the State of Arizona, and the Honorable Jack T. Arnold, Respondents/Appellees.

No. 18255–PR

Supreme Court of Arizona, In Banc.

Feb. 14, 1986.

Reconsideration Denied April 8, 1986.

Stephen Paul Barnard, Tucson, for petitioners/appellants.

Frederick S. Dean, City Atty. by Frank Kern III and Elisabeth Sotelo, Asst. City Attys., Tucson, for respondents/appellees.

CAMERON, Justice.

This is a review of a decision and opinion of the court of appeals which, on reconsideration, affirmed the denial of each appellant's motion to dismiss. *Mongan et al. v. Pima County Superior Court*, 148 Ariz. 511, 715 P.2d 764 (1985). We granted the petition for review because the subject matter is one of continuing interest affecting a great number of cases statewide. We have jurisdiction pursuant to Ariz. Const. art 6, § 5(3), A.R.S. § 12–120.24 and Rule 31.19, Ariz.R.Crim.P. 17 A.R.S..

The issues on review are:

1. Does the waiver without counsel of a second breath sample provided for in the *Baca* decision, also permit the

waiver without counsel of the preservation of his first breath sample?

2. Does Rule 28.2(e), Ariz.R.Crim.P. 17 A.R.S., prevent the destruction of a breath sample without notice to accused's counsel?

The facts follow. All six appellants were arrested and charged with violating A.R.S. §§ 28–692(A) and 28–692(B). Each appellant submitted to an intoxilyzer test pursuant to the implied consent statute, A.R.S. § 28–691. All were tested upon a particular intoxilyzer model that could preserve the actual breath sample tested by the machine. Each appellant was asked at the time of the test to indicate on a standard form whether they wished to have the actual tested sample preserved. Five of the appellants waived this right by indicating on the form that they did not want the sample preserved. One appellant, Carlos Matrecito, signed the form requesting that the sample be preserved. However, he failed to pick up the sample within thirty days, as he had been notified was required, so it also was destroyed. Each of the appellants was also informed of his right to an independent blood test.

Later, appellants filed a motion in Tucson City Court for dismissal of the charges for failure to preserve the breath samples. The motion was denied and a special action was brought to the superior court, which denied relief. The court of appeals initially reversed the trial court but upon reconsideration affirmed the denial of relief as to all appellants.

## WAIVER

■ Appellants, relying on *Scales v. City Court of the City of Mesa,* 122 Ariz. 231, 594 P.2d 97 (1979), argue that the state had a duty to preserve the breath sample taken from them because its destruction "deprives the defendant of a crucial source of evidence with which to attack the validity of the test reading and hence the presumption." 122 Ariz. at 234, 594 P.2d at 100. Since the state's duty to preserve evidence affects a defendant's fundamental right to a fair trial any waiver

thereof must be a voluntary and intentional relinquishment of a known right. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Appellants contend that an accused should either not be allowed to waive his right to the preservation of his original breath sample or alternatively that a defendant should not be permitted to make such a waiver without assistance of counsel. We do not agree with either contention.

■ First, we note, as did the court of appeals, that a defendant may, without counsel, waive constitutional rights. *See State v. Reese,* 111 Ariz. 249, 527 P.2d 508 (1974) (right to counsel) and *State v. Finn,* 111 Ariz. 271, 528 P.2d 615 (1974) (right to remain silent).

■ In *Baca v. Smith,* 124 Ariz. 353, 604 P.2d 617 (1979), we held that a defendant has a right to have a second breath sample preserved, where the original sample is destroyed during testing. *Baca* also stated that a defendant could without counsel waive this second sample. *Id.* at 356, 604 P.2d at 620. We see no logic in a rule that allows a defendant to validly waive, without counsel, his right to the taking and preservation of a second breath sample, *Baca v. Smith, supra,* but prohibits a defendant from waiving, without counsel, the preservation of his original breath sample, if the test device used allows such preservation.

■ Admittedly, while such a waiver does not require the assistance of counsel, the waiver form used by the police must adequately inform the suspects of the rights they are waiving. *Baca* states that the waiver form should provide that a suspect has been informed of his right to a second breath sample and does not wish one preserved for him. *Baca v. Smith,* 124 Ariz. at 356 n. 1, 604 P.2d at 620 n. 1. In accordance with this requirement, the waiver forms in the instant case asked the appellants to indicate underneath the following statement whether they wished to have the breath sample preserved:

## RIGHT TO THE BREATH SAMPLE

You have the right to have the breath sample tested by an expert of your own choosing at your own expense. If you choose to have the breath sample preserved and are subsequently convicted, you will have to pay a fee of three dollars ($3.00) for the care and custody of the sample whether or not you pick up the sample or have it analyzed. If you choose to have the sample preserved, it will be held at the Tucson Police Department Evidence Section, 270 South Stone Avenue, for thirty (30) days for you or your authorized representative to pick up. Your breath test indicates a blood alcohol concentration of ____%. Knowing your test result, do you want the breath sample preserved?

Such a statement fulfills the general guidelines prescribed by *Baca*. The record in this case shows no evidence that the appellants did not intelligently and voluntarily waive the preservation of their breath samples. We find no error in the denial of the motion to dismiss as to those appellants who indicated they did not want the breath sample preserved.

## DESTRUCTION OF THE BREATH SAMPLE

Appellants argue that the state should not be allowed to destroy the breath samples until notice is given to the defendant and his counsel pursuant to Rule 28.2(e), Ariz.R.Crim.P., 17 A.R.S.. This claim is based on *Scales v. City Court of the City of Mesa, supra,* wherein we stated: "The police departments may destroy the ampoules after giving the notice and following the procedure required by 17 A.R.S., Rules of Criminal Procedure, rule 28.2(e)." 122 Ariz. at 235, 594 P.2d at 101.

Initially, it should be noted that one year after the *Scales* decision, this court stated:

Rule 28 is part of Section VII of the Rules of Criminal Procedure, which is entitled "Post-Verdict Proceedings." This section regulates events which occur in the criminal process following adjudication of charges. As such, it is gener-ally inapplicable to pretrial discovery which is covered by Section IV, entitled "Pretrial Procedures." Pretrial discovery motions such as the one before us are regulated by Rule 15, 17 A.R.S., Rules of Criminal Procedure. Rule 28.2 was therefore irrelevant to defendant's pretrial motion for discovery or in the alternative to suppress.

*State v. Superior Court,* 127 Ariz. 175, 177, 619 P.2d 3, 5 (1980) (footnote omitted). We did not, however, void the requirement of *Scales* that the ampoules be preserved and later destroyed in a proper manner and *Scales* held that if the police followed the procedure in Rule 28.2, the requirement of due process would be satisfied.

■ Each appellant's waiver of his right to have his breath sample preserved logically includes waiver of any later notice that the sample will be destroyed. If a suspect says he does not want his breath sample preserved, he may assume it will then be destroyed. No later notice of destruction is required, and police may dispose of the sample. We hold as to a suspect who waives the preservation of his breath sample, there is no need to comply with Rule 28.2(e) before the sample is destroyed.

Finally, as to appellant Matrecito who requested that his breath sample be preserved, we find no error. On 22 June 1983, he indicated on the form that he wished to have his sample preserved. That form stated that he must pick up the sample, if preserved, within thirty days or it would be destroyed. On 7 July 1983, a copy of the notice of his test result and a reminder that the breath sample would be destroyed if not picked up within thirty days from 22 June was given to Matrecito and a copy mailed to his attorney. Since this thirty day period would extend until 22 July, both Matrecito and his counsel were given notice of the pending destruction of the breath sample in accordance with *Scales, supra,* and Rule 28.2(e), Ariz.R.Crim.P. 17 A.R.S. The court properly denied his motion to dismiss.

The denial of appellant's motions to dismiss are affirmed, and the cases remanded to Tucson City Court for further proceedings.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.

FELDMAN, Justice, dissenting

I dissent because I believe that the majority has overlooked a fundamental problem. It may be, as the majority holds, that the defendants can waive preservation of the breath sample, that they may do so without counsel, that the waiver form was adequate and defendants intentionally relinquished their rights. However, there are other, more important principles involved. The criminal justice system has its own interests. These certainly include efficiency of operation, conviction of the guilty and acquittal of the innocent. Preservation of evidence has always been considered a key factor in achieving these goals. *See Scales v. City Court of City of Mesa*, 122 Ariz. 231, 594 P.2d 97 (1979), in which we first criticized the state's practice of destroying breath samples and required that they be preserved; *see also State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964).

The principle is even more important in cases such as this, where the evidence held by the police is the direct evidence of guilt—it·is, in a manner of speaking, the crime itself. To convict under § 28–692(B) the state need show only that the sample—which the majority permits the police to destroy—contained a blood alcohol content in excess of .10%. No other evidence is needed, *Fuenning v. Superior Court*, 139 Ariz. 590, 680 P.2d 121 (1983), even though the equipment used is subject to a margin of error. *Id. See also State ex rel. Collins v. Seidel*, 142 Ariz. 587, 691 P.2d 678 (1984).

No week goes by without this Court being asked to review cases that raise issues pertaining to calibration of the equipment, its proper use, the chance of operator error, conflicting expert opinions (even among law enforcement agencies) as to proper technique and questions of preservation of samples. With all this in mind, it becomes difficult to understand what interest other than clerical convenience is served by permitting destruction of the direct evidence. No other benefit is cited. In a prosecution for possession of narcotic drugs we would not permit the state to destroy the evidence, with or without the supposed consent of the defendant. If we were to do so, we would be faced with an unending procession of cases in which it was alleged that the "consent" was not voluntary, or was given without comprehension, or was otherwise defective and that the alleged drug, no longer available for verification, was not a proscribed substance. Similar arguments come before us quite often in DUI cases.

Permitting destruction of key evidence is bad judicial policy. Neither the defendants nor the state can force it upon us. We have both explicit constitutional power and inherent authority to supervise procedures in the courts of this state. *See* Arizona Constitution art. 6, §§ 3 and 5; *Thomas v. Arn*, —— U.S. ——, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *State v. Borst*, 278 Minn. 388, 154 N.W.2d 888 (1967); *Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854 (1974) (addendum opinion); *Kersey v. State*, 525 S.W.2d 139 (Tenn.1975) (invoking "inherent supervisory power" to order that all trial judges in the state, "when faced with deadlocked juries," refrain from giving the so-called dynamite instruction and instead "comply with the ABA Standards Relating to Trial by Jury" —525 S.W.2d at 144). Indeed, this Court has done as much under its "inherent supervisory power", without bothering to use the words. In speaking to the same issue—use of the so-called dynamite instruction—this Court acknowledged there was no error of law in the instruction, but went on to state:

"We readily concede that a close reading and study [of the instruction], sentence by. sentence, does not reveal any misstatement of the law. Yet it now appears that the old adage referred to by Justice Udall—'proof of the pudding is in

the eating'—aptly applies. This instruction has been before us four times. When and wherever its use is called into question it must stand or fall upon the facts and circumstances of each particular case. It has given, and we believe each use will give us, harassment and distress in the administration of justice. No rule of thumb can circumscribe definite bounds of when and where, or under what circumstances it should be given or refused.

"It now appears that its continued use will result in an endless chain of decisions, each link thereof tempered and forged with varying facts and circumstances and welded with ever-changing personalities of the appellate court. This is not in keeping with sound justice and the preservation of human liberties and security. We are convinced that the evils far outweigh the benefits, and decree that its use shall no longer be tolerated and approved by this court."

*State v. Thomas,* 86 Ariz. 161, 166, 342 P.2d 197, 200 (1959).

Both the principle and the actual words are applicable to the present case. Continued tolerance of the destruction of evidence which constitutes the only direct proof of the crime charged serves no substantial purpose, probably allows occasional conviction of someone who is not guilty and, where the waiver is found invalid, occasionally permits acquittal of someone who is guilty. Destruction of the evidence confuses the issues in many cases, diverts attention from the real issue in others and consumes judicial time. Destruction also induces some defendants to take their chances at trial when verification of the blood sample by independent testing would undoubtedly induce many to plead guilty.

Given the terrible backlog of DUI cases (at a recent oral argument counsel for the state indicated that a year's delay in getting to trial is not uncommon), we should be doing everything possible to expedite disposition of cases—take pleas from the guilty, acquit the innocent and get the drunk drivers off the road. Today's decision perpetuates a practice that "has given and ... will give us, harassment and distress in the administration of justice." As with the dynamite instruction, continued use of the waiver "will result in an endless chain" of argument over irrelevant questions involving destruction of evidence, thus diverting valuable time and resources from the only true issue—whether the defendant's blood alcohol content exceeded the limit proscribed by the statute.

This Court is bound by neither the defendants' waiver nor the state's clerical convenience. Our obligation is to administer a system of justice fairly, impartially and efficiently. That obligation is better fulfilled if we do not permit the state to use the waiver as a device to overrule *Scales, supra.* I would hold that the state must retain until trial the direct evidence of guilt or innocence which it has obtained from the defendants.