788 P.2d 99

STATE of Arizona, ex rel., Frederick S. DEAN, City Attorney for the City of Tucson, Plaintiff/Appellant,

v.

The CITY COURT OF the CITY OF TUC-SON, the Honorable Thomas G. Martin, a Magistrate thereof, and Mark Wilson, Edward J. Davis, Mathew Finlay, Glen Barkyoumb, James Balkow and Robert M. Perea, Real Parties in Interest, Defendants/Appellees.

No. 2 CA–CV 89–0040.

Court of Appeals of Arizona, Division 2, Department A.

Oct. 31, 1989.

Review Granted Feb. 6, 1990.

Frederick S. Dean, Tucson City Atty. by Christopher L. Straub, Tucson, for plaintiff/appellant.

David M. Gerson, Tucson, for appellee Wilson.

Dunscomb & Shepherd, P.C. by Paul J. Gattone, Tucson, for appellee Davis.

Christopher M. O'Connell, Tucson, for appellee Finlay.

Martin & Mohling by T. Andrew Mohling, Tucson, for appellee Barkyoumb.

Gaila Davis, Tucson, for appellee Balkow.

Stephen Bergsten, Tucson, for appellee Perea.

HOWARD, Judge.

This is an appeal from the denial of special action relief. The state filed a motion in limine to determine the admissibility of the breath test administered to the appellees in order to permit the state to use the results at trial. The appellees filed motions to suppress. After taking evidence the magistrate denied the state's motion to permit the use of the intoxilyzer breath results at trial. The state then filed a complaint for special action relief in the superior court which eventually affirmed the magistrate.

## FACTS

In December 1987, appellees were arrested for driving under the influence. At the time the Tucson Police Department and the City Attorney's Office were engaged in a joint project to test the legal sufficiency of a replicate breath testing procedure. This meant that no breath samples were to be captured or preserved although the machine used was capable of preserving a breath sample. Instead, each was given the option of providing two breath samples

or a single blood sample to be examined for blood alcohol concentration. The appellees were advised by police officers as follows:

If you choose the breath test, no sample of your breath will be saved for you or your attorney for later analysis. If you choose the blood test, you will be taken to a hospital where your blood will be drawn at no expense to you. The sample of your blood will be saved and available for testing by all parties in a criminal case.

Regardless of whether you choose to give samples of your breath or blood, you are advised that you have the right to an independent test or tests by a physician or other qualified person of your own choosing at your expense.

All the appellees chose to submit to two breath samples and all signed a waiver which stated in part:

I understand that by choosing breath test to determine the amount of alcohol in my blood that NO SAMPLE OF MY BREATH WILL BE SAVED FOR ME OR MY ATTORNEY.

Each of the results, except those of appellee Finlay, exceeded .10 percent of blood-alcohol content, and the variance from the replicate test was less than .02 percent blood-alcohol content.[1]

At an evidentiary hearing before Chief Magistrate Thomas G. Martin, the state was allowed to make an offer of proof through its expert witnesses as to use of the replicate procedure. These witnesses testified that the system presently utilized, i.e. the preservation of a breath sample, is subject to a number of problems not encountered in the replicate procedure. The saved breath sample contained in a silica gel tube may be contaminated by mouth alcohol recently brought up by the stomach and this would result in an artificially high result on both the original reading and the retest. Also, inconsistent results may occur when a defendant's sample is either improperly collected or improperly stored by him or when the retest procedure used by the defendant's chosen analyst falls short of generally accepted standards. Since these pitfalls are not encountered in the replicate procedure, these experts considered the replicate procedure superior to the present system and more accurate since the replicate tests must agree within .02 percent. There was also evidence that the National Safety Council has recommended that all states adopt replicate testing and abandon the practice of capturing and preserving second breath samples.

## CONTENTIONS OF THE PARTIES

The state contends that it offered the appellees due process under the Fourteenth Amendment to the United States Constitution because (1) due process only requires that an arrestee be informed of the choices that allow him to test the state's evidence at a later date; (2) its procedures complied with the requirements set forth in *Oshrin v. Coulter*, 142 Ariz. 109, 688 P.2d 1001 (1984); (3) replicate breath testing without providing a sample to the arrestee has been upheld by the United States Supreme Court in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); (4) other jurisdictions have abandoned sample preservation in light of the *Trombetta* case.

The appellees contend: (1) The *Trombetta* case is factually distinguishable from the case sub judice because the machine used by the California court was not designed to preserve a breath sample; (2) the Arizona Supreme Court has distinguished *Trombetta* based on the separate due process guarantee of the Arizona Constitution and (3) if the city wants to utilize replicate testing it can do so and still provide the arrestee with a breath sample.

## DISCUSSION

In *Oshrin v. Coulter*, supra, the defendant was arrested for driving while under the influence and given an intoximeter breath test. He requested that a separate sample be preserved for his own use. Af-

---

1. Replicate testing is a series of two consecutive breath tests spaced by air blanks to flush out the sample chambers. A reading is taken of each of the two samples and the variance between the two tests must be no greater than .02 percent in order for the test to be considered as valid.

ter eight hours in custody, the charges were dropped and he was released. The defendant made no effort to have his breath sample tested and the state subsequently destroyed the sample. Four months later, driving under the influence charges were filed which included a charge under A.R.S. § 28–692(B), driving with a blood-alcohol content of .10 percent. The defendant moved to suppress the evidence and dismiss the charges because his breath sample had been destroyed. The trial court denied the motion. On appeal, our supreme court remanded the case to the trial court with directions to suppress the breathalyzer test and grant the motion to dismiss the charge under A.R.S. § 28–692(B). The defendant was also charged with driving under the influence under A.R.S. § 28–692(A), and the supreme court held that the defendant could be tried under that statute based on evidence other than evidence of the breathalizer sample.

On appeal the state in *Oshrin* relied on the United States Supreme Court case of *California v. Trombetta,* supra, which held that the due process clause of the Fourteenth Amendment does not require that officers preserve breath samples in order to use test results at trial. Our supreme court concluded that there were three important differences in *Trombetta* that distinguished it from the facts of *Oshrin.* First, the intoxilyzer used in *Trombetta* was different from the machine used in Arizona in that the California intoxilyzer did not preserve any samples and, in any event, it appeared that there were sufficient safeguards to make the results of the test reliable and therefore admissible without preserving a second sample for testing by the accused.

Second, the fact situation was entirely different. *Trombetta* did not involve a case of destroying evidence. Third, and more important, under California law, the suspect is given a choice, at state expense, of having his blood alcohol concentration determined by either a blood test, a urine test or a breath test. In case of the blood or urine test, samples may be preserved for the defendant. However, in the *Oshrin* case the accused had no such option. He either took the breath test or no test at all.

In *Montano v. Superior Court Pima County,* 149 Ariz. 385, 719 P.2d 271 (1986), the court gave the key to the decision in this case:

> An essential lesson to be drawn from *McNutt [v. Superior Court of State of Arizona,* 133 Ariz. 7, 648 P.2d 122 (1982)], *Scales [v. City Court of City of Mesa,* 122 Ariz. 231, 594 P.2d 97 (1979)], and *Baca [v. Smith,* 124 Ariz. 353, 604 P.2d 617 (1979)] is that a defendant must be allowed to counter the state's scientific evidence of intoxication, or evidence of refusal, with the defendant's own scientific evidence.

That was done here, the appellees were given the choice of taking a blood test, instead of the breath test, at the state's expense and with a sample of the blood preserved for them. The breath test is not sacrosanct. The state can use blood tests instead of breath tests. See A.R.S. § 28–691(A) and *Campbell v. Superior Court In and For Maricopa County,* 106 Ariz. 542, 479 P.2d 685 (1971). A right to a sample of the breath test may be waived by the arrestee. See *Mongan v. Pima County Superior Court,* 148 Ariz. 486, 715 P.2d 739 (1986). The appellees waived their right to a blood sample by opting for the breath test.

The decision of the superior court is reversed with directions to vacate and set aside the order of the city magistrate.

ROLL, P.J., and HATHAWAY, J., concur.