789 P.2d 180

STATE of Arizona, ex rel., Frederick S. DEAN, City Attorney for the City of Tucson, Plaintiff/Appellant,

v.

The CITY COURT OF the CITY OF TUCSON, the Honorable Thomas G. Martin, a Magistrate thereof, and Mark Wilson, Edward J. Davis, Mathew Finlay, Glen Barkyoumb, James Balkow and Robert M. Perea, Real Parties in Interest, Defendants/Appellees.

No. CV–89–0440–PR.

Supreme Court of Arizona,
En Banc.

March 26, 1990.

Frederick S. Dean, Tucson City Atty. by R. William Call, Deputy City Atty., and Christopher L. Straub, Asst. City Atty., Tucson, for plaintiff/appellant.

David M. Gerson, Tucson, for defendant/appellee Wilson.

Dunscomb & Shepherd by Denice R. Shepherd, Tucson, for defendant/appellee Davis.

Christopher O'Connell, Tucson, for defendant/appellee Finlay.

T. Andrew Mohling, Tucson, for defendant/appellee Barkyoumb.

Gaila C. Davis, Tucson, for defendant/appellee Balkow.

Stephen C. Bergsten, Tucson, for defendant/appellee Perea.

OPINION

FELDMAN, Vice Chief Justice.

We address the admissibility of certain Intoxilyzer results. Defendant Edward J. Davis filed a petition for review asking this court to review a court of appeals decision in this matter. *See State ex rel. Dean v. City Court*, 163 Ariz. 366, 788 P.2d 99 (Ct.App.1989). Defendants Mark Wilson and James Balkow filed notices of joinder. The state filed a cross-petition for review. We granted review under Rule 23, Ariz.R. Civ.App.P., 17B A.R.S. We have jurisdiction in this matter pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

FACTS

Defendants[1] were stopped for traffic violations in Tucson during the month of December 1987. After investigation, each was arrested for driving under the influence (DUI) in violation of A.R.S. § 28–692(A). At the time of the arrests, the Tucson Police Department and the Tucson City Attorney's Office were engaged in a joint project to test the legal sufficiency of replicate breath testing.[2] Each defendant was given the option of providing two breath samples or a single blood sample to be examined for blood alcohol concentration. Under the usual procedure in Tucson, the DUI suspect submits to a single test on the Intoxilyzer and is then provided with a preserved breath sample, whether or not the suspect requests one. The preserved breath sample involves capture and preservation of the breath for later testing. *See Baca v. Smith*, 124 Ariz. 353, 604 P.2d 617 (1979).

The police advised each defendant as follows:

> If you choose the [Intoxilyzer] breath test, no sample of your breath will be saved for you or your attorney for later analysis. If you choose the blood test, you will be taken to a hospital where your blood will be drawn at no expense to you. The sample of your blood will be saved and available for testing by all parties in a criminal case.

> Regardless of whether you choose to give samples of your breath or blood, you are advised that you have the right to an independent test or tests by a physician or other qualified person of your own choosing at your expense.

If the suspect chose to submit a breath rather than a blood sample, a waiver was presented for the suspect to sign which stated in part:

> I understand that by choosing breath tests to determine the amount of alcohol in my blood that NO SAMPLE OF MY BREATH WILL BE SAVED FOR ME OR MY ATTORNEY.

---

1. The following cases were consolidated for the purposes of determining this issue and have remained consolidated: State v. Mark Wilson, State v. Edward J. Davis, State v. Mathew Finlay, State v. Barkyoumb, State v. James Balkow, and State v. Robert M. Perea.

2. Replicate breath testing is a series of two consecutive breath tests spaced by air blanks to flush out the sample chambers. A reading is taken of each of the two samples and the variance between the two samples must be within .02 percent for the test to be valid.

All defendants chose to submit two Intoxilyzer breath samples and all signed the waiver, thus refusing the blood test.

Prior to trial, the state filed motions in limine to determine the admissibility of the test results obtained from the replicate testing procedure. Defendants filed motions to suppress the test results. An evidentiary hearing was held, at which the state was allowed to make an offer of proof through expert testimony as to the use of replicate testing procedures. Following the evidentiary hearing, the magistrate denied the state's motion and refused to allow the results of the breath tests to be admitted at trial. The state then filed a petition for special action relief in superior court, which affirmed the magistrate's ruling.

The state appealed to the court of appeals, which reversed and remanded with directions to vacate and set aside the magistrate's order. *State ex rel. Dean*, 163 Ariz. at 368, 788 P.2d at 101. The court held that because the state gave defendants a choice between taking replicate breath tests, where they were advised that no *Baca* samples of their breath would be saved, and a single blood test, where defendants were advised that a sample of blood would be preserved for later testing by all parties, the due process requirements of *Montano v. Superior Court*, 149 Ariz. 385, 719 P.2d 271 (1986); *McNutt v. Superior Court*, 133 Ariz. 7, 648 P.2d 122 (1982); *Baca v. Smith*, 124 Ariz. 353, 604 P.2d 617 (1979); and *Scales v. City Court*, 122 Ariz. 231, 594 P.2d 97 (1979), were satisfied. *State ex rel. Dean*, 163 Ariz. at 368, 788 P.2d at 101.

Defendant Davis petitioned for review, asking that we determine whether due process considerations under the Arizona Constitution are met when the state refuses to give a defendant a sample of his breath test when he chooses replicate breath testing without sample preservation and rejects a blood test with sample preservation.

The state filed a cross-petition, asking that we determine whether due process is satisfied in a DUI case by offering replicate breath tests without sample preservation and without providing a blood sample, and whether we should overrule prior cases such as *Baca* because of the alleged unreliability of the silica gel method of preserving breath samples.

## DISCUSSION

### A. Breath Testing in General

Tucson, along with the majority of jurisdictions in Arizona, uses the Intoxilyzer to test blood alcohol content. In an Intoxilyzer test, the suspect blows a sample of deep-lung air through a mouthpiece and tubing into the machine, which uses a process of infrared spectroscopy to examine the amount of ethyl alcohol present in the sample and converts this into a breath alcohol concentration reading of grams of alcohol per 210 liters of breath. 2 R. ERWIN, DEFENSE OF DRUNK DRIVING § 15.02, at 15–10 (1989).

Several factors can affect the accuracy of the test results: random error, radio frequency interference, mouth alcohol,[3] chemical interferants, insufficient alveolar sample, and operator error. However, Intoxilyzers have a number of mechanisms to guarantee the accuracy and reliability of test results. The Model 5000 Intoxilyzer used in these cases gives the operator step-by-step instructions. If the test is not administered correctly, the machine invalidates the test. The Model 5000 protects itself against radio frequency interference and also can detect chemical interferants. The machine can detect mouth alcohol, and invalidates the test when it is detected. Finally, the instrument will indicate that the sample is deficient if deep-lung air is not obtained.

The silica gel method of breath preservation is used in conjunction with the Intoxilyzer. It utilizes a glass tube with silica gel crystals in it. Silica gel is a highly absorbent substance that attracts and cap-

---

3. Mouth alcohol is alcohol remaining in the mouth after recent consumption, or alcohol brought up from the stomach by burping or vomiting, which would cause an artificially high result when the breath sample is subsequently tested.

tures moisture. Because the Intoxilyzer does not destroy the breath sample as it is analyzed, the same breath sample used in the state's test is blown over the silica gel upon completion of the primary test. The tube is then sealed and given to the defendant for independent analysis.

The reliability of the silica gel method is disputed. *See, e.g.,* A. Bergh, *Observations on ToxTrap Silica Gel Breath Capture Tubes for Alcohol Analysis,* 30 J. OF FORENSIC SCI. 186 (1985) (concluding that the Intoxilyzer is twice as accurate as the silica gel method). The state's experts testified at the evidentiary hearing that there are a number of problems that may affect the accuracy of the test. The results may be affected by undetected mouth alcohol, faulty collection, improper storage and transportation, and deficient testing procedures.

The state's experts testified at the evidentiary hearing that replicate testing avoids the problems inherent in the silica gel method, as well as ruling out the possibility of random error that is present with a single Intoxilyzer test. Reporter's Transcript of Evidentiary Hearings Held April 6 and April 20, 1988 (filed Aug. 8, 1988), at 117, 138–40. The National Safety Council has recommended that all states adopt replicate testing and abandon requirements to capture second samples. *Id.* at 139; *see also* ERWIN, § 18.03.

### B. Arizona Case Law Regarding Preservation of Breath Samples

*Baca* was the first Arizona case to require that police provide a DUI suspect with a separate sample of breath. The instrument used in *Baca* was a gas chromatograph intoximeter (GCI), which, unlike the Intoxilyzer but like the Breathalyzer, destroys the breath sample it tests. The issue in *Baca* was "whether, when a sample of a suspect's breath is consumed in the

analysis, another sample must be taken and preserved for the private use of the suspect." *Id.* at 354, 604 P.2d at 618. The court concluded:

[T]he right to test incriminating evidence where the evidence is completely destroyed by testing becomes all the more important because the defense has little or no recourse to alternate scientific means of contesting the test results, and therefore, *when requested,* the police must take and preserve a separate sample for the suspect by means of a field collection unit.

*Id.* at 356, 604 P.2d at 620 (emphasis added).

Subsequent cases expanded the *Baca* requirement. In *State v. City Court,* the court of appeals required arresting officers to advise persons charged with driving while intoxicated of their right to have a breath sample preserved for independent testing, whether the testing device used is a Breathalyzer or an Intoxilyzer. 130 Ariz. 285, 286, 635 P.2d 878, 879 (Ct.App.1981).

Although generally the state is not obligated to assist a suspect in gathering potentially exculpatory evidence, this court determined that the unique circumstances surrounding DUI arrests justifies an exception. *Montano,* 149 Ariz. at 389, 719 P.2d at 275. Under *Baca,* the state had only a limited duty to inform the defendant that a second breath sample will be provided to him upon request when the state invoked the implied consent statute by administering a breath test. *Id.* Because the only objective evidence in a DUI case is "inherently evanescent, [and] is virtually dispositive of guilt or innocence," we held in *Montano* that due process requires the state to inform a suspect of his right to an independent test of blood alcohol content, even where the state does not invoke the implied consent law and conduct its own chemical test. *Id.*[4]

---

**4.** Although *Montano* held that when the state does not invoke the implied consent law and give the suspect the opportunity for a breath test, the suspect must be told of his right to an independent test, in *State v. Ramos* the court of appeals held that where the state did invoke the implied consent law but the defendant refused

the test, there is no constitutional right to be advised of the right to obtain an independent test. 155 Ariz. 153, 156, 745 P.2d 601, 604 (Ct. App.1987). Failure to inform the defendant of his right to an independent test did not constitute interference with his right to obtain the test, where the defendant was afforded a fair

The most recent case to discuss breath capture procedures is *State v. Harrison*, 157 Ariz. 184, 755 P.2d 1172 (Ct.App.1988), which involved the reliability of the second sample provided to DUI defendants. The court of appeals held that, "since one of the purposes of requiring that a second sample be provided is to impeach the state's test, defendants must be able to rely on the test results obtained from those samples. Therefore, the state must provide a reasonably reliable sample." *Id.* at 186, 755 P.2d at 1172.

C. Adequacy of the Replicate Testing Procedure

The primary issue in this case is whether the procedure used by the Tucson police, and the instructions given to the defendants at the time their breath was tested, were sufficient to satisfy the due process guarantees of *Baca*. We find that the *Baca* requirements were satisfied.

■ As even defendants agree, the state is free to utilize replicate testing under the Arizona Implied Consent Statute, A.R.S. § 28-691. This statute provides that "tests of ... blood, breath, or urine for the purpose of determining the alcohol or drug content of ... blood" are appropriate, at the choice of the law enforcement agency. A.R.S. § 28-691(A). The statute does not specify the precise test that must be used. However, defendants argue that despite the fact that replicate testing may be used for the state's primary breath test, due process guarantees of the Arizona Constitution and case law still require the state to preserve a breath sample for a defendant's independent analysis.

■ Even if due process requires that defendants in a DUI case be given the opportunity to challenge the accuracy of the state's evidence, we do not agree that a captured breath sample is the only method that will satisfy due process. Any method that is "reasonably reliable" will suffice. It is generally agreed that a blood test is the most accurate measure of how much alcohol is in a person's system. *See, e.g.,* ERWIN, § 17.01, at 17-2 to 17-3, § 18.01, at 18-2. We therefore hold that a blood sample satisfies the requirements of *Baca*.

■ Here, the defendants were offered the choice of replicate breath testing with no breath sample preserved, or a blood test *at state expense*, where the sample would be preserved and available to the defendant for independent testing. In addition, the police went even further and informed defendants that they had the right to an independent test at their own expense. Because the reason defendants are given a sample is to allow them to challenge the accuracy of the state's evidence, it is irrelevant whether the sample given is a breath sample or a blood sample, as long as it is "reasonably accurate."

We hold that defendants waived their right to an independent sample when they rejected the offered blood test and sample and chose to have their breath tested after the police advised them that submission to replicate testing would result in no breath sample being saved for later analysis. *See Mongan v. Pima County Superior Court*, 148 Ariz. 486, 487-88, 715 P.2d 739, 740-41 (1986) (DUI suspect may waive the right to an independent breath sample, as long as the waiver is intelligently and voluntarily made); *see also Baca*, 124 Ariz. at 356, 604 P.2d at 620.

■ Davis argues that the information provided to him was insufficient to enable him to knowingly, intelligently, and voluntarily waive his rights because the police officer failed to explain what the absence of a breath sample would mean to his defense if he chose the breath test. We are not persuaded. Each defendant was told of his right to demand a blood test with preserved sample and was told that if he chose replicate breath testing there would be no sample. The information given by the police was adequate to satisfy due process. The police are not in the business of giving legal advice, nor will we put them in

---

chance to obtain independent evidence. *Id. State v. White*, 155 Ariz. 452, 455, 747 P.2d 613, 616 (Ct.App.1987), expanded on this somewhat

and held that police are not required to inform a defendant who has been given a breath test of his right to an independent blood test.

that position. To require police officers to attempt to explain to a defendant what the absence of a breath sample would mean to his or her case would be to require them to practice law.

### D. Continuing Validity of *Baca*

The issue of whether *Baca* should be overruled or modified based on the unreliability of the silica gel method of breath preservation is before this court in *State v. Velasco,* No. CV–89–0303–SA (jurisdiction accepted Oct. 3, 1989). Because we have concluded that due process was satisfied by the procedure used by the Tucson police, the issue raised in the cross-petition is moot. The order granting review of the cross-petition is vacated as improvidently granted and review of the cross-petition is denied.

### CONCLUSION

Because we find that the defendants' due process rights were protected by the procedure used by the Tucson police, we approve the court of appeals' opinion and remand to the superior court to vacate the order suppressing the Intoxilyzer results and any further proceedings consistent with this opinion.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.