918 P.2d 1077

**Albert Anthony DIAZ, Petitioner–Appellant,**

v.

**ARIZONA DEPARTMENT OF TRANSPORTATION, Respondent–Appellee.**

No. 1 CA–CV 94–0538.

Court of Appeals of Arizona, Division 1, Department C.

March 5, 1996.

Review Denied June 19, 1996.

Scholz & Scholz by LynnAnn Scholz, Bullhead City, for Petitioner–Appellant.

Grant Woods, Attorney General by Susan E. Davis, Assistant Attorney General, Phoenix, for Respondent–Appellee.

## OPINION

SULT, Judge.

We are again faced with the issue of the amount of information a law enforcement officer must give a person arrested for driving under the influence of alcohol when the officer requests that person to take a blood or breath alcohol concentration test. We dealt with this issue in *Edwards v. Arizona Dep't of Transp.*, 176 Ariz. 137, 859 P.2d 760 (App.1993) on constitutional grounds. We now address it in the context of a statutory construction argument.

## FACTS AND PROCEDURAL HISTORY

On December 12, 1993, Bullhead City Police Officer Steve Smith stopped a car driven by appellant, Albert Anthony Diaz, for failure to stop at a stop sign. Following an investigation at the scene, the officer arrested Diaz for suspicion of driving under the influence of alcohol. Smith transported Diaz to the Bullhead City Police Department where he read Diaz the "Implied Consent Affidavit" and requested him to take the test. When asked,

Diaz first shook his head, and when asked again, he replied, "No, sir."

Diaz works for a natural gas company and his job requires that he drive. He told Officer Smith he was very concerned that a DUI could cost him his job. Smith explained to Diaz that a refusal to take the test would result in a one-year suspension of his license. Moreover, as part of the standard admonitions on the affidavit, he also informed Diaz that if he took the test and registered above 0.10% blood or breath alcohol concentration, his license would be suspended for 90 days. Smith did not, however, inform Diaz that if he took and failed the test, he might be eligible for a 30–day suspension followed by a 60–day period of restricted driving privileges. When Diaz expressed concern about his driving privileges, Smith suggested that he contact the Motor Vehicle Division, a suggestion he makes to everyone he arrests for DUI.

After Diaz's refusal, Smith served an order suspending Diaz's driver's license and Diaz requested an administrative hearing. At the hearing, Diaz stipulated that Smith had reasonable grounds to arrest him, that he was arrested, and that he refused to take the test. The only issue he contested was whether he was properly informed of the consequences of his refusal to submit to the test. The hearing officer issued his Findings of Fact, Conclusions of Law, Decision, and Order in which he found that Diaz was informed of the consequences of refusing to take the test and ordered Diaz's license suspended for twelve months.

Diaz petitioned the superior court to review the suspension order. The court entered a temporary restraining order, barring the Department of Transportation from enforcing the suspension during the pendency of the proceedings or until further order of the court. After briefing and argument, the trial court issued a detailed minute entry order and subsequent judgment affirming the suspension order. Diaz has appealed that judgment and this court has jurisdiction under Arizona Revised Statutes Annotated ("A.R.S.") sections 12–2101(B) (1994) and 12–913 (1992).

## ISSUES RAISED

Diaz raises two issues, both relating to the requirement that the hearing officer determine whether the arrestee "was informed of the consequences of refusal" as required by A.R.S. section 28–691(G) (Supp.1995). These issues are:

1. Whether proper statutory construction, supported by public policy considerations, requires that arrestees for DUI be informed of all statutory consequences of refusal.

2. Whether the arresting officer misled Diaz as to the consequences of refusal.

## DISCUSSION

### I. "Consequences" in A.R.S. section 28–691(G)

When a person is arrested for DUI, A.R.S. section 28–691(B) requires that the officer request the person to take a blood or breath alcohol concentration test and inform him "that his license or permit to drive will be suspended or denied for twelve months unless he expressly agrees to submit to and successfully completes the test or tests." If the person refuses the test and later requests a hearing regarding the propriety of action taken against his license or privilege to drive, the hearing officer is required to determine, *inter alia*, whether the person "was informed of the *consequences* of refusal." A.R.S. § 28–691(G) (emphasis added).

Diaz argues that by using the plural of consequence, the legislature intended to include more than what Diaz characterizes as the single consequence of section 28–691(B), namely a license suspension for twelve months. Diaz posits that another consequence of refusal is the inability of a refusing arrestee to obtain the restricted permit under section 28–694(B) which is available to persons who submit to the test but fail it. This statute authorizes a restricted driving permit for 60 days following a 30 day full suspension, the so-called 30/60 permit. Diaz characterizes the unavailability of this permit to refusing arrestees as another statutory consequence of refusal. He then argues that sound public policy requires that we construe subsection (G) of section 28–691 to find that

the legislature intended that an arresting officer must inform an arrestee of all statutory consequences, which would necessarily include the unavailability of this permit. Diaz reasons that if arrestees were informed of the availability of a 30/60 driving permit, fewer would refuse to submit to testing. This anticipated result would then further the legislature's policy, evidenced in the implied consent statute, of encouraging persons to provide evidence to the state.

We do not find these arguments persuasive. We first note that subsection (B) speaks of suspension *or* denial, two different actions that can be taken against a person's legal status as a driver. *See, e.g.,* A.R.S. §§ 28–446 (Supp.1995) (suspensions for various reasons), 28–454 (Supp.1995) (license denial to an unlicensed resident), 28–413 (Supp. 1995) (persons to whom a license shall not be issued). Two possible actions equal two possible consequences and this provides the antecedent for the legislature's use of the plural form of "consequence" in subsection (G).

As for Diaz's policy argument, that is better addressed to the legislature. We will not, under the guise of policy considerations, substitute our judgment for that of the legislature in determining how much information a police officer shall give to an arrestee. *White v. State,* 144 Ariz. 39, 42, 695 P.2d 288, 291 (App.1985) ("The judiciary should not, on a subject over which reasonable persons may differ, add to a statute that which the legislature deemed unnecessary."). Nor is there any constitutional concern which would require that we go beyond the clear import of the statute delineating the information to be conveyed. As Diaz concedes, any such issue has already been decided adversely to him in the strikingly similar factual setting of *Edwards v. Arizona Dep't of Transp.,* 176 Ariz. 137, 859 P.2d 760 (App.1993) (due process does not require officer to inform DUI arrestee of possibility of 30/60 restricted driving permit).

■ Moreover, we do not believe that the legislature intended any more than it said in subsection (B). We note here the teachings expressed by cases such as *State ex rel. Dean v. City Court,* 163 Ariz. 510, 789 P.2d 180 (1990) (in criminal prosecution, police not

required to inform subject of the consequences to his defense position at trial of a failure to request a preserved breath sample) and *White v. State,* 144 Ariz. 39, 695 P.2d 288 (App.1985) (in driver's license suspension case, police not required to inform subject of the consequences of not having a preserved breath sample). As indicated by these cases, the primary responsibility of a police officer in DUI cases is to protect the public by getting the drunk driver off the road, arresting him for DUI, and serving a license suspension order. While the legislature has given police the additional responsibility to inform an arrestee of the consequences of the choices he must make when arrested for DUI, this responsibility is quite limited. As *Dean* and *White* have cautioned, police officers should not be placed in the business of giving legal advice. For us to read anything additional in the way of "consequences" into sections 28–691(B) and (G) would be to ignore that admonition. We decline to do so.

## II. Officer's Information Regarding "Consequences"

■ When Diaz expressed concern about not being able to drive and consequently losing his job, Officer Smith advised him to contact the MVD, which is something he does with all persons he arrests for DUI. Smith was aware of the 30/60 restricted driving provision and mistakenly thought that it might also apply to persons who refused the test.

In his brief, Diaz argues that Smith misled him into believing that he would be eligible for restricted driving privileges under A.R.S. section 28–694(B). This argument is absolutely refuted by the testimony of both Smith and Diaz himself. Smith testified:

COUNSELOR: Okay. So you didn't tell him, one way or another, what would happen at the Motor Vehicle [Department]. You just told him that you thought it was in his best interest or advised him, to contact them direct.

OFFICER SMITH: That's correct.

COUNSELOR: So there was no real discussion of availability or unavailability of a

restricted license based on a refusal situation.

OFFICER SMITH: I don't recall having a discussion like that.

COUNSELOR: Okay. Let me ask it another way. Isn't it true that you did not specifically tell Mr. Diaz that if he refused to take the test, he probably would not be able to get a restricted license—whereas if he took the test—even if it was a .10—he would be more likely to get a restricted license. You didn't say anything along those lines?

OFFICER SMITH: I didn't make that distinction. No.

. . . . .

HEARING OFFICER: Officer Smith. Do I understand you correctly to say that you recommended, as is your custom, that Mr. Diaz contact MVD but that you did not have any actual discussion with him about restricted driver's licenses. Is that what I understand you to say?

OFFICER SMITH: That's correct.

Diaz testified:

COUNSELOR: Do you remember Officer Smith telling you anything that would happen to you if you lost your license? Did he talk to you at all about restricted license and the availability of a restricted license?

PETITIONER: No, he didn't.

There being absolutely no support in the record, we conclude that Diaz's argument that Officer Smith misled him is frivolous.

## CONCLUSION

We find that the information required to be conveyed by A.R.S. section 28–691(B) is clear from that statute and was properly conveyed in this case to Mr. Diaz. We therefore conclude that the requirements of A.R.S. section 28–691(G) were met at the administrative hearing and the trial court correctly upheld the order suspending Diaz's license. The judgment of the superior court is affirmed.

FIDEL, P.J., and LANKFORD, J., concur.