967 P.2d 129

**The STATE of Arizona, Appellant,**

v.

**Ramie Chacon SANCHEZ, Appellee.**

**No. 2CA–CR97–0524.**

Court of Appeals of Arizona,
Division 2, Department A.

July 30, 1998.
Review Denied Nov. 17, 1998.*

* Martone and McGregor, JJ., voted to grant the petition for review.

Barbara LaWall, Pima County Attorney by Jonathan Bass, Tucson, for Appellant.

Stephen Paul Barnard, Tucson, for Appellee.

## OPINION

BRAMMER, Judge.

¶ 1 The trial court dismissed one count of aggravated driving under the influence of intoxicating liquor (DUI) filed against appellee, Ramie Sanchez, finding that his due process rights had been violated because the machine used to test his breath was not scientifically valid or reliable, the state should have known that it did not meet the established state regulations for breath testing devices, and he did not waive his right to an independent test. The state appeals, arguing that Sanchez's due process rights were not violated and that, even if they were, the trial court should simply have suppressed the breath test results instead of dismissing the charge. We affirm.

### Facts and Procedural Background

¶ 2 The parties stipulated that the facts were as follows.[1] Sanchez was arrested in May 1997 for aggravated DUI in violation of former A.R.S. § 28–692(A)(1) and (A)(2). The officers who arrested him invoked the provisions of the Arizona implied consent law pursuant to former A.R.S. § 28–691 and told Sanchez he had a choice between giving two "valid" breath samples in which no sample would be preserved or having his blood tested with a sample preserved. Sanchez chose to take the breath test. The officers used an Intoximeter RBT–IV to test Sanchez's breath. After further investigation into that device, however, defense counsel established at a hearing that it was not scientifically reliable in its ability to test a sample of alveolar air from a subject. Thus, Sanchez's breath test results were inaccurate, and the

1. The specific facts to which the parties stipulated are contained in the appendix to this opinion.

trial court ruled they were inadmissible at trial. Both parties stipulated that the RBT–IV was unreliable and as a result, the state dismissed the charge under former A.R.S. § 28–692(A)(2).

¶ 3   Sanchez moved to dismiss the remaining charge on due process grounds, arguing that use of the unreliable machine had prevented him from obtaining an accurate assessment of his blood alcohol concentration at the time when it was most critical and, because of the inherent unreliability of the RBT, that he could not have intelligently and voluntarily waived his right to an independent sample. The trial court agreed and dismissed the remaining count.

### Discussion

¶ 4   "We review an order granting a motion to dismiss criminal charges for an abuse of discretion or for the application of an incorrect legal interpretation." *State v. Lemming*, 188 Ariz. 459, 460, 937 P.2d 381, 382 (App.1997). The state argues that due process required only that Sanchez be told of his right to obtain an independent test and that, because he was told, his due process rights were not violated. The state further contends that because Sanchez chose to take an invalid breath test instead of a blood test, and failed to avail himself of his right to obtain an independent test, he voluntarily waived his right to an independent test. We disagree.

¶ 5   "Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness" and defendants must be afforded a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413, 419 (1984). Due process requires that defendants have a " 'fair chance' " to obtain potentially exculpatory evidence. *Montano v. Superior Court*, 149 Ariz. 385, 389, 719 P.2d 271, 275 (1986), *quoting Smith v. Ganske*, 114 Ariz. 515, 517, 562 P.2d 395, 397 (App.1977). Arizona has a long history of cases in which the courts have addressed the issue of blood alcohol testing. In *Baca v. Smith*, 124 Ariz. 353, 604 P.2d 617 (1979), our supreme court held that due process required the state, when requested, to preserve a second breath sample for the defendant's own testing, or to demonstrate that the defendant waived the taking and preservation of a second sample. *See also Mongan v. Superior Court*, 148 Ariz. 486, 715 P.2d 739 (1986); *Scales v. City Court*, 122 Ariz. 231, 594 P.2d 97 (1979). The defendant's waiver must be knowing, voluntary, and intelligent. *Montano; Mongan.* A voluntary and intelligent waiver means the defendant intentionally relinquished or abandoned a known right or privilege. *Montano.*

¶ 6   Since the accuracy of breath testing devices has increased, the requirement of preserving a second breath sample has disappeared. In *State ex rel. Dean v. City Court*, 163 Ariz. 510, 789 P.2d 180 (1990), our supreme court reviewed the history of breath testing and its reliability. It specifically discussed the Model 5000 Intoxilyzer and, accepting that device's accuracy and reliability, held that when a defendant is given an express choice between a blood test with a sample preserved and chooses the breath test, the defendant waives the right to an independent breath sample. The court also found that, as long as the method used to test blood alcohol is "reasonably accurate," it is irrelevant whether the sample given is a breath sample or a blood sample. *Id.* at 514, 789 P.2d at 184. *See also State v. Harrison*, 157 Ariz. 184, 755 P.2d 1172 (App. 1988) (defendants must be able to rely on test results obtained from second breath sample). Although the supreme court in *Dean* did not specifically hold that a defendant is never entitled to a second breath sample for independent testing, that issue has since been addressed by Division One of this court in *Moss v. Superior Court*, 175 Ariz. 348, 352, 857 P.2d 400, 404 (App.1993):

Given the reliability and accuracy of replicate testing with an Intoxilyzer 5000, we do not believe that due process or fundamental fairness requires the state to provide defendants with breath samples. In light of the acknowledged technological development of the Intoxilyzer 5000, the focus inherently shifts from the breath sample to the machine itself. . . .

*See also State v. Bolan*, 187 Ariz. 159, 927 P.2d 819 (App.1996), *quoting Moss*, 175 Ariz.

at 353, 857 P.2d at 405 ("Tests performed on the Intoxilyzer 5000 are so accurate that additional breath samples 'no longer add anything "meaningful" to the opportunity to present a defense.' ").

¶ 7 Contrary to the state's argument, due process is satisfied only when the defendant is given a "reasonably accurate" replicate breath test, *State ex rel. Dean*, or a blood test. By being offered a flawed breath test, with no sample preserved, Sanchez was denied his right to "a meaningful opportunity to present a complete defense," *Trombetta*, 467 U.S. at 485, 104 S.Ct. at 2532, 81 L.Ed.2d at 419, and was denied his due process rights. Moreover, we fail to see how, by choosing the breath test, Sanchez waived his right to an alternate test, when, as the trial court stated: "The blood test was obviously declined because he believed that he was being offered the opportunity to take another equally valid test." There was no knowing, intelligent, and voluntary waiver of Sanchez's right to obtain an independent test.

¶ 8 The state next argues that, even if Sanchez's due process rights were violated, the proper remedy is suppression of the evidence, not dismissal, citing *Oshrin v. Coulter*, 142 Ariz. 109, 688 P.2d 1001 (1984); *Scales*; *State v. Vannoy*, 177 Ariz. 206, 866 P.2d 874 (App.1993); *Harrison*; and *State v. City Court*, 130 Ariz. 285, 635 P.2d 878 (App.1981). We disagree.

¶ 9 "[A]n unreasonable or unconstitutional interference with attempts to secure a blood sample for exculpatory purposes in a DWI prosecution under A.R.S. § 28–692 requires a stay or dismissal of the charge as a remedy." *Amos v. Bowen*, 143 Ariz. 324, 328, 693 P.2d 979, 983 (App.1984). In *Amos*, the defendant was detained in a police car for about two hours because of an emergency call before he was transported to the hospital for a blood test. After the delay, the defendant decided he did not want the test. The court held that although the delay was proper, the affirmative conduct of the police violated the defendant's right to obtain exculpatory evidence. Although a breath test was not at issue in *Amos*, the same due process rights of both the defendant there and Sanchez require that they be afforded a fair chance to obtain independent evidence of sobriety essential to their defense at the only time when it is available, whether it be from an independent blood test or a test given by the state. *See Montano*; *Ganske*.

¶ 10 Similar to the facts in *Amos*, the record reveals that the state[2] unreasonably interfered with Sanchez's only opportunity to obtain potentially exculpatory evidence by testing him on a machine that yielded inaccurate results. The trial court found that the RBT–IV used on Sanchez was removed from service shortly before his test and sent back to the manufacturer for repairs because of erroneously high readings. The trial court further found that when the device was returned to the state, it did not contain any repair record or further explanation and although a criminalist from the crime laboratory called the manufacturer and requested the record, the machine was returned to service without knowledge of the repairs. It was used to test Sanchez's alcohol concentration the next day. Most importantly, the trial court, although not specifically finding that the state acted in bad faith, concluded that it and its agents were on notice of the RBT–IV's failure to accurately test alveolar air no later than March 1997 and did not meet either established state regulations for breath testing devices or minimal *Frye*[3] standards.

¶ 11 Although the cases the state cites did not involve dismissal as a remedy for due process violations, they are distinguishable. In *Scales*, *Harrison*, and *City Court*, the courts did not find that the state had acted in bad faith. In *Vannoy*, the defendant did not move to dismiss his case because of deficient

---

2. The record suggests that the officer who offered Sanchez the option of having a breath or blood test was unaware of the RBT–IV's unreliability. This is of no consequence, however, because he is charged, as an agent of the state, with the knowledge of his superiors that the RBT–IV was unreliable and should not be used to measure alcohol levels. *See generally State v.* *Williams*, 182 Ariz. 548, 898 P.2d 497 (App.1995) (arresting officer need not be in personal possession of all facts as long as probable cause exists from collective knowledge of all agents involved in operation).

3. *Frye v. United States*, 293 F. 1013 (D.C.1923).

breath samples; he moved to dismiss based on the state's refusal to allow him to call an attorney. In *Oshrin,* the court found the state had acted in bad faith but held that suppression under the impairment charge was sufficient. Although it appears that this case is similar to that of *Oshrin,* we find, as did the court in *Amos,* that it is different in one relevant aspect: the interference with the defendant's constitutional right to obtain exculpatory evidence, at the only time it was available. The defendant in *Oshrin* was never initially denied his right to a valid test. The state gave him a valid test but, after the charges were dismissed, the state destroyed the defendant's second breath sample without informing him of the possibility that the state could refile the charges. The court held that the state acted in bad faith when it failed to inform the defendant of possible re-indictment, but held that suppression of the original test was sufficient. Here, as in *Amos,* Sanchez was denied the opportunity to obtain any result. There are no test results to be suppressed because they were admittedly invalid. Unlike *Oshrin,* the state knowingly interfered with Sanchez's right to obtain potentially exculpatory evidence which could refute a charge pursuant to both §§ 28–692(A)(1) and (A)(2).

¶ 12 Because the state was on notice that the RBT–IV was flawed, yet nonetheless chose to use it and informed Sanchez of its validity, the trial court properly found that Sanchez was denied a fair chance to obtain potentially exculpatory evidence at the only time it was available.

¶ 13 The decision of the trial court is affirmed.

DRUKE, C.J., and FLÓREZ, P.J., concur.

APPENDIX

CR-57251

### STATE OF ARIZONA VS. RAMIE CHACON SANCHEZ

### STIPULATION OF FACTS

1. On May 31, 1997, the Defendant was arrested on charges of violating A.R.S. § 28-692A.(1) and A.(2).

2. The officer(s) involved in the arrest invoked the provisions of the Arizona Implied Consent Law pursuant to A.R.S. § 28-691.

3. The officer(s) advised the Defendant that the Defendant had a choice between giving two "valid" breath samples with no sample preservation or blood testing with a sample being saved for both parties.

4. The Defendant agreed and signed a consent form for two "valid" breath samples, without a sample being saved.

5. The breath test operator administered consecutive breath tests on the Defendant using an Intoximeter RBT-IV.

6. The officer did not advise the Defendant what breath test device would be used to test his breath and did not advise the Defendant of any deficiencies with regard to the Intoximeter RBT-IV device.

7. At the time of the Defendant's tests, the Intoximeter RBT-IV was not scientifically reliable with regard to its ability to capture and test a sample of alveolar air from a given subject.

8. The results of the analysis of Defendant's breath using the Intoximeter RBT-IV device are not reliable and will not be used as evidence in any prosecution of the Defendant.

9. The State has dismissed the charge under A.R.S. § 28-692A.(2).

10. In March of 1994, the Arizona Department of Health Services added the RBT-IV Intoximeter to its list of certified breath test devices under Reg. R-9-14-403(K) [1]

11. Sometime prior to March of 1994, Jim Farrell of the Department of Health Services tested a device designated an RBT-IV on behalf of the Department. Mr. Farrell does not know what "type" of RBT-IV he tested. A device was mailed to him and he does not recall the source from which he obtained the device or which type or model he tested.

---

1. It was added to the permanent list of certified devices under R-9-14-403(a) in February of 1996.

12. Farrell tested the device at his home one night. The testing consisted of examining the device's ability to analyze a known value of alcohol concentration using a simulator solution. This was the only testing that was done on the device on behalf of the Department.

13. The device was not tested with regard to its ability to recognize, capture or correctly analyze a sample of human alveolar breath.

14. The Department of Health Services' certification of the RBT-IV device was improper, as the device was not adequately designed to capture or test an alveolar (deep lung) air sample or to notify the operator electronically if it did not obtain an alveolar sample.

15. The Intoximeter RBT-IV device was never tested by the Department of Health Services, in the field, under the actual conditions in which it would be used.

16. On August 26 and August 29, 1994, Nora Rankin, an employee of the City/County Crime Laboratory, changed out and replaced computer chips in all thirteen microprocessors-printers owned and/or used by the Tucson Police Department. The purpose of the microchip exchange was to eliminate a nonsensical value from being printed after a "void" test under circumstances where an insufficient sample was purportedly introduced for testing.

17. These modified devices, including the device used to test the Defendant's breath, were not added to the list of approved devices under R9-14-403(G) and (K). The device as modified, has never been tested by the Department of Health Services to determine the effect of the modification.

18. Nora Rankin did not inform anyone about the microchip exchange until May, 1997.

19. The manufacturer of the Intoximeter RBT-IV devices has submitted for approval by the Department of Health Services a new RBT-IV model known as "RED DOT X" which has been programmed so as to increase the success rate of capturing and analyzing an alveolar air sample as required by Department of Health Services regulations. These new devices have totally different software than the device used to test the Defendant.