813 P.2d 315

STATE of Arizona, Appellee,

v.

**Bret John KEMP, Appellant.**

No. CR–90–0315–PR.

Supreme Court of Arizona,
En Banc.

June 11, 1991.

Grant Woods, Atty. Gen. by Paul J. McMurdie and Randall M. Howe, Asst. Attys. Gen., Phoenix, for appellee.

Yvonne Ayers, Bisbee, for appellant.

Roderick G. McDougall, Phoenix City Atty. by Kent C. Kearney, Asst. Phoenix City Prosecutor, Phoenix, for amicus curiae, Phoenix City Prosecutor's Office.

GORDON, Chief Justice.

The State of Arizona (State) petitioned for review of the court of appeals' decision reversing Bret John Kemp's (Kemp) conviction for manslaughter and driving while under the influence (DWI) charges. We granted review to determine whether law enforcement officers, when obtaining a blood sample pursuant to A.R.S. § 28–692(M),[1] must advise the suspect of his right to obtain a portion of the same sample. We ordered supplemental briefing on whether a legitimate distinction may be drawn between blood testing and breath testing so that the due process standards established by this court in *Baca v. Smith*, 124 Ariz. 353, 604 P.2d 617 (1979), and its progeny need not be applied in blood testing cases. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

FACTUAL AND PROCEDURAL
BACKGROUND

On January 5, 1989, Kemp drove his automobile into the path of an oncoming vehicle, causing the death of the other driver, Hung Quoc Luu. Following the accident, police and other emergency vehicles arrived on the scene. An ambulance took Kemp to Sierra Vista Community Hospital. According to police testimony, Kemp smelled of alcohol prior to being transported, as well as during his questioning at the hospital.

Less than two hours after the accident, Officer Eric Ickes of the Arizona Depart-

1. Now codified as A.R.S. § 28–692(J).

ment of Public Safety (DPS) arrived at the hospital to obtain Kemp's blood sample. Although Kemp was not under arrest at that time, Officer Ickes received Kemp's consent to blood sampling after informing him that if he did not consent, his license would be suspended pursuant to A.R.S. § 28–691(B), the implied consent statute. He did not advise Kemp of his right to an independent blood test.

A hospital employee then drew four vials of Kemp's blood using DPS's vacutainer blood collection kit. A criminalist at the DPS crime laboratory in Phoenix performed a gas chromatography test that revealed a blood alcohol content (BAC) of .17 percent.

Kemp argued at trial that the blood test results should be suppressed because the blood was improperly seized by the State and, alternatively, that the police did not advise him of his right to obtain an independent test or a portion of the blood sample drawn at the hospital. The trial court, however, admitted the test results over Kemp's objections. The jury found him guilty of manslaughter using a dangerous instrument (an automobile), driving a motor vehicle under the influence of intoxicating liquor while his license was suspended, and driving a motor vehicle with a .10 percent or more blood alcohol content while his license was suspended. The trial court sentenced him to concurrent, mitigated prison terms, the longest being five years on the manslaughter conviction.

The court of appeals reversed the convictions on the manslaughter and DWI with a suspended license charges and remanded for a new trial. 166 Ariz. 339, 802 P.2d 1038. It dismissed with prejudice Kemp's conviction of DWI with a .10 percent or more blood alcohol content.

## DISCUSSION

■ Once again we are presented with a due process question in a DWI case. The State argues that the court of appeals created a new right that due process does not require. It claims that due process does

not require law enforcement officers to advise a DWI defendant that he may obtain a portion of a blood sample seized because (1) blood testing leaves a portion of the seized blood sample available for independent testing by the defendant, and (2) blood testing is so accurate that an independent test would not provide exculpatory evidence. Because we conclude that due process does not require law enforcement officers to advise a DWI defendant that he may obtain a portion of a blood sample seized because blood testing leaves a portion of the seized blood available for independent testing by the defendant, we need not address the State's argument regarding the accuracy of blood testing.

Kemp, on the other hand, argues that the court of appeals' opinion is consistent with our cases holding that fundamental fairness requires law enforcement officials to advise DWI suspects of their right to obtain, for independent testing, breath samples collected by the officials.

This court's cases have held that the police must take and preserve a separate breath sample for independent testing by a DWI defendant. *See State ex rel. Dean v. City Court*, 163 Ariz. 510, 789 P.2d 180 (1990); *Montano v. Superior Court*, 149 Ariz. 385, 719 P.2d 271 (1986); *Oshrin v. Coulter*, 142 Ariz. 109, 688 P.2d 1001 (1984); *Baca v. Smith*, 124 Ariz. 353, 604 P.2d 617 (1979); *Scales v. City Court*, 122 Ariz. 231, 594 P.2d 97 (1979). We also have held that due process in breath testing cases requires that the defendant be advised of his right to an independent test of BAC, even where the State does not invoke the implied consent law, because of the "inherently evanescent" quality of the evidence. *Montano*, 149 Ariz. at 389, 719 P.2d at 275. The State in this case requests that we reexamine the rules established by this line of cases, arguing that *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), has overruled our decisions requiring that a defendant be given a breath sample.[2] We de-

2. *Trombetta* held "that the Due Process Clause of the Fourteenth Amendment does not require

that law enforcement agencies preserve breath samples in order to introduce the results of

cline the State's invitation to reexamine the rules in breath testing cases because this is not a breath testing case; rather, it is a case involving blood testing.

Having declined the State's invitation to reexamine the rule that a DWI defendant must be given a breath sample for independent testing, we must now determine whether the rule in breath testing cases should also apply in blood testing cases. We believe that legitimate distinctions exist between breath testing and blood testing and, therefore, that the rule for breath testing cases need not be extended to blood testing cases.

This court has stated that:

There is probably no more nebulous and indefinable concept in the law than "due process of law." Generally speaking, the denial of due process is a denial of "fundamental fairness, shocking to the universal sense of justice."

*State v. Velasco,* 165 Ariz. 480, 487, 799 P.2d 821, 828 (1990) (quoting *Oshrin,* 142 Ariz. at 111, 688 P.2d at 1003). In the breath testing cases, we have held that due process requires that the defendant be advised of his right to a breath sample for independent testing.

One reason for this standard is that in certain types of breath testing, the sample is completely consumed or destroyed by the testing procedure. In *Baca,* we stated that

the right to test incriminating evidence *where the evidence is completely destroyed by testing* becomes all the more important because the defense has little or no recourse to alternate scientific means of contesting the test results, and, therefore, when requested, the police must take and preserve a separate sample for the suspect by means of a field collection unit.[3]

124 Ariz. at 356, 604 P.2d at 620 (emphasis added). Likewise, we held in *Montano* that "[t]he Due Process Clause of the Ari-

zona Constitution guarantees to DWI suspects 'a *fair chance* [emphasis in original] to obtain independent evidence of sobriety essential to his defense *at the only time it [is] available.*'" 149 Ariz. at 389, 719 P.2d at 275 (citation omitted) (emphasis added). We reasoned that when "*the only objective evidence is inherently evanescent,* is virtually dispositive of guilt or innocence, and collecting the evidence places only a slight burden upon the state, due process requires that a suspect be informed of his right to gather the evidence prior to its dissipation." *Id.* (emphasis added).

We believe that breath testing is significantly different than blood testing. Although a blood test, like a breath test, "is virtually dispositive of guilt or innocence, and collecting the evidence places only a slight burden upon the state," it is not "inherently evanescent." Rather, blood testing by gas liquid chromatography, the method generally used by laboratories in Arizona and the method used in this case, usually does not consume or destroy the whole sample. *See generally* D. Nichols, *Drinking/Driving Litigation: Criminal and Civil* (1985); 2 R. Erwin, *Defense of Drunk Driving Cases* § 17.05 (1989). Thus, the rationale used in *Montano* is not present in a blood testing case because blood, when properly stored and maintained, is still available for testing by the defendant at the time of trial. This availability lessens the need for law enforcement officials to advise a DWI suspect that he may obtain, for independent testing, a portion of the blood sample being tested by the law enforcement agency.

■ We believe that the due process clause, as applied in DWI cases, can legitimately have two standards—one for breath testing cases and one for blood testing cases. Thus, we hold that law enforcement officers, when obtaining a blood sample pursuant to A.R.S. § 28–692(M), need

---

breath-analysis tests at trial." *Id.* at 491, 104 S.Ct. at 2535.

**3.** Our court of appeals has recognized, however, that this right to a breath test is not "sacrosanct" and can be waived if the defendant is offered another chemical test at the state's expense and

the sample is preserved and available for independent testing. *See State ex rel. Dean v. City Court,* 163 Ariz. 366, 368, 788 P.2d 99, 101 (App. 1989), *approved* 163 Ariz. 510, 789 P.2d 180 (1990).

not advise the suspect of his right to obtain a portion of the same sample for independent testing, at least when the sample taken by law enforcement officers will still be available for testing by the defendant at the time of trial.[4]

## DISPOSITION

In this case, we have discussed the differences between breath tests and blood tests. This discussion neither affirms nor rejects the rules that presently apply in breath cases. We have expressly declined to reconsider those rules in this opinion.

Because we believe the trial court correctly admitted the blood test results, we vacate the court of appeals' opinion and affirm the defendant's convictions and sentences. ·

FELDMAN, V.C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.

---

4. This defendant, at the hearing on his motion to suppress, failed to show that his blood sample was unavailable for independent testing. Therefore, he did not demonstrate a due process violation. We do note, however, that if a defendant affirmatively requests a separate blood sample for independent testing, law enforcement officials may not interfere with his efforts to obtain such a sample. *Amos v. Bowen,* 143 Ariz. 324, 327–28, 693 P.2d 979, 982–83 (App. 1984).