2 P.3d 100

**Nanci MACK, Petitioner,**

v.

**Hon. Michael J. CRUIKSHANK, Judge of the Superior Court of State of Arizona, in and for the County of Pima, Respondent,**

**and**

**The State of Arizona, Real Party in Interest.**

**Robert Marmion, Petitioner,**

v.

**Hon. Michael J. Cruikshank, Judge of the Superior Court of the State of Arizona, in and for the County of Pima, Respondent,**

**and**

**The State of Arizona, Real Party in Interest.**

**State of Arizona ex rel. Thomas J. Berning, Attorney, for the City of Tucson, Petitioner,**

v.

**Hon. Michael Brown, Judge of the Superior Court of the State of Arizona, in and for the County of Pima, Respondent,**

**and**

**Glenda Hawkins, Real Party in Interest.**

**Nos. 2 CA–SA 99–0034, 2 CA–SA 99–0040, 2 CA–SA 99–0057.**

Court of Appeals of Arizona, Division 2, Department A.

Sept. 16, 1999.

Review Denied May 23, 2000.

Law Office of Trezza & McDonald, P.C. By Al McDonald and Stephen M. Trezza, Tuscon, Attorneys for Petitioner Mack.

Charles P. Davies, Tucson Public Defender By Reed Palmer, Tucson, Attorneys for Petitioner Marmion.

Thomas J. Berning, Tucson City Attorney By R. William Call and M.J. Raciti and Michael G. Rankin, Tuscon, Attorneys for Petitioner and Real Party in Interest State of Arizona.

Law Offices of Stephen Paul Barnard, P.C. By Stephen Paul Barnard and Kelly C. Knop, Tuscon, Attorneys for Real Party in Interest Hawkins.

## *O P I N I O N*

FLÓREZ, Judge.

¶ 1 In these consolidated special action proceedings, petitioners Nanci Mack and Robert Marmion and real party in interest Glenda Hawkins (collectively, the defendants) were each charged in the underlying criminal proceedings with violating former A.R.S. § 28–692(A)(1), driving while under the influence of intoxicating liquor (DUI), and former § 28–692(A)(2), driving with an alcohol concentration of 0.10 or more.[1] After discovering that the Intoximeter RBT–IV used to test the defendants' breath was unreliable, the state voluntarily dismissed the (A)(2) charges and agreed not to introduce evidence of the defendants' breath test results. The issue presented here is whether the state's use of a breath-testing device ultimately determined to be unreliable also requires dismissal of the (A)(1) charges. Because petitioners have no right to appeal, A.R.S. § 22–375; because the issue presented is a matter of law, *State ex rel. McDougall v. Superior Court,* 172 Ariz. 153, 835 P.2d 485 (App.1992); and because the lower courts have entered conflicting rulings based on *State v. Sanchez,* 192 Ariz. 454, 967 P.2d 129 (App.1998), we accept jurisdiction. Ariz. R.P. Special Actions 1(a), 17B A.R.S.

---

1. The statute is now numbered as A.R.S. § 28–1381(A)(1) and (2). 1996 Ariz. Sess. Laws, ch. 76, § 3.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Each defendant was arrested for DUI. Mack was arrested on February 5, 1997; Marmion on July 15, 1996; and Hawkins on October 23, 1996. Each submitted to a breath test on an Intoximeter RBT–IV breath-testing device. The state later stipulated in each case that the RBT–IV was unreliable in calculating blood alcohol concentration (BAC) and dismissed the (A)(2) charges. The state also agreed not to use the breath test results for any purpose.

¶ 3 The defendants then moved to dismiss their (A)(1) charges, claiming the state's use of the RBT–IV to test their breath violated their due process rights. In each case, a city court magistrate granted the defendant's motion, based on our holding in *Sanchez*. The state appealed to superior court in Mack and Marmion and filed a petition for special action in superior court in Hawkins. Respondent Judge Cruikshank reversed the magistrates' rulings in Mack and Marmion, concluding that *Sanchez* did not apply because Mack and Marmion were arrested before the date established in *Sanchez* as the first notice the state had that the RBT–IV was an unreliable machine and that suppression of the breath tests was an adequate remedy. Respondent Judge Brown denied the state relief in *Hawkins*, agreeing with the magistrate there that dismissal of the (A)(1) charge was the appropriate sanction. These special action petitions followed.

## DUE PROCESS VIOLATION

¶ 4 The defendants argue that our holding in *Sanchez* requires dismissal of the (A)(1) charges, contending that the state knew or should have known the RBT–IV was unreliable when it was used to test their breath and, thus, that the state denied them due process because it unreasonably interfered with their constitutional right to obtain potentially exculpatory evidence. In addition, Hawkins asserts that the repair history of the particular RBT–IV at issue in *Sanchez* is irrelevant, contending the state's subsequent, voluntary dismissal of the (A)(2) charge in every case in which the RBT–IV was used reflects both the unreliability of the machine in general and the breadth of our holding in *Sanchez*.

¶ 5 The state counters that the respondent judge in *Mack* and *Marmion* properly refused to dismiss the (A)(1) charges, arguing that the dismissal in *Sanchez* was based on the finding that the state had knowingly interfered with Sanchez's due process rights. The state maintains that, in *Sanchez*, the state was on notice that the particular machine was flawed before the officer used it to test Sanchez's breath and that, in these cases, nothing in the record supports the defendants' claim that the state knew the machines were unreliable when it conducted their breath tests.

¶ 6 Because the defendants' due process claims are issues of law, our review is de novo. *Little v. All Phoenix South Community Mental Health Center*, 186 Ariz. 97, 919 P.2d 1368 (App.1996). We are, however, bound by the magistrates' findings of fact unless the findings are clearly erroneous. *Lee Development Co. v. Papp*, 166 Ariz. 471, 803 P.2d 464 (App.1990).

¶ 7 In *Sanchez*, the trial court ruled after a hearing that the breath test results were inaccurate and inadmissible at trial. The parties then stipulated that the RBT–IV was unreliable, the state dismissed the (A)(2) charge, and Sanchez successfully moved to dismiss the (A)(1) charge. On appeal, this court affirmed the trial court's dismissal of the (A)(1) charge, based on the trial court's conclusions that Sanchez's due process rights had been violated by the state's use of an unreliable breath-testing machine, that the state should have known the machine was unreliable, and that Sanchez had not waived his right to an independent test.

¶ 8 Stating that "[d]ue process requires that defendants have a ' "fair chance" ' to obtain potentially exculpatory evidence," we cited the trial court's findings that, shortly before Sanchez's test, the machine had been removed from service and sent to the manufacturer for repairs because of erroneously high readings, that it was returned without any explanation or accompanying repair record, and that it was nevertheless restored to service the day before his test. *Sanchez*, 192 Ariz. 454, ¶ 5, 967 P.2d 129, ¶ 5, *quoting*

*Montano v. Superior Court*, 149 Ariz. 385, 389, 719 P.2d 271, 275 (1986), *quoting Smith v. Ganske*, 114 Ariz. 515, 517, 562 P.2d 395, 397 (App.1977). In addition, we relied on the trial court's findings, based on hearings it had held, that the state had been on notice no later than March 1997, two months before Sanchez's arrest, that the RBT–IV failed to accurately test alveolar air and that the machine did not meet either the state regulations for breath-testing devices or the minimal standards required by *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). Although we acknowledged that the trial court had not expressly found that the state had acted in bad faith, we concluded the court's statements were tantamount to such a finding, thus warranting dismissal of the (A)(1) charge, because the state had knowingly interfered with Sanchez's "constitutional right to obtain exculpatory evidence ... at the only time it was available." *Sanchez,* 192 Ariz. 454, ¶ 11, 967 P.2d 129, ¶ 11.

¶ 9 The crux of our decision in *Sanchez* was that the evidence supported the trial court's findings of fact and conclusions of law, not only on the state's conduct in having had Sanchez's breath tested on a particular machine of dubious reliability but also on the appropriate remedy for that conduct. We did not intend by that decision to state a general rule applicable to all (A)(1) charges in cases in which the state used an Intoximeter RBT–IV breath-testing device. Nor did we intend to impose a blanket rule that, by March 1997, the state was on notice that all RBT–IVs were unreliable; instead, we upheld the trial court's finding, based on the evidence it had heard in the case, that the state was on notice by March 1997 that the RBT–IV was unreliable. In other words, we applied the appropriate standard of review, *see State v. Stotts,* 144 Ariz. 72, 695 P.2d 1110 (1985), and concluded that the evidence supported the trial court's findings of fact, including the implicit finding that the state had acted in bad faith.

■ ¶ 10 Nonetheless, we conclude that the state violated the defendants' due process rights in these cases by asking them to submit to a breath test on a machine the state later determined did not accurately ascertain

BAC. In reaching this conclusion, however, we examine the nature of the due process right involved.

■ ¶ 11 The state asked the defendants to submit to a test to determine their BAC pursuant to the implied consent law, former A.R.S. § 28–691, now A.R.S. § 28–1321. Under that statute, a person who operates a motor vehicle in Arizona, if arrested for a DUI offense, consents to submit to a test of his or her "blood, breath, urine or other bodily substance" to determine BAC or drug content. Although a DUI suspect does not have a "right" to refuse to submit to a test, he or she does have the "physical power" to refuse. *Campbell v. Superior Court,* 106 Ariz. 542, 549, 479 P.2d 685, 692 (1971). Refusal results in suspension of the person's driver's license for twelve months; former § 28–691, now § 28–1321; and admission of the refusal into evidence at the DUI trial. Former § 28–692(I), now § 13–1381(N).

■ ¶ 12 Because DUI cases "are particularly susceptible of resolution by way of chemical analysis of intoxication," *Montano,* 149 Ariz. at 391, 719 P.2d at 277, and because the test results are "virtually dispositive of guilt or innocence," *id.* at 389, 719 P.2d at 275, due process requires that the state ensure that the tests it demands drivers submit to produce reasonably accurate results. *See* former A.R.S. § 28–695(D)(2), now A.R.S. § 28–1324(2) (procedures must ensure accurate results are obtained from approved breath-testing devices).

■ ¶ 13 For the reasons just stated and because the objective evidence of a person's alcohol concentration dissipates quickly and because the jury in a DUI case is instructed on the statutory presumptions of former § 28–692(E), now § 28–1381(H), a DUI suspect is entitled to challenge the results of the state's test. *See State ex rel. McDougall v. Corcoran,* 153 Ariz. 157, 735 P.2d 767 (1987). To enable a suspect to do so, a line of cases has progressed, as the breath-testing technology has advanced, from requiring the state to preserve the breath ampoule it tests, *Scales v. Mesa City Court,* 122 Ariz. 231, 594 P.2d 97 (1979); to requiring it to take and preserve a second sample when the test sam-

ple is destroyed in the testing process, *Baca v. Smith,* 124 Ariz. 353, 604 P.2d 617 (1979); to requiring that the second sample be "reasonably reliable," *State v. Harrison,* 157 Ariz. 184, 186, 755 P.2d 1172, 1174 (App.1988); to holding that offering a suspect a choice between a duplicate breath test with no sample preserved and a blood test with a preserved sample meets due process requirements, *State ex rel. Dean v. Tucson City Court,* 163 Ariz. 510, 789 P.2d 180 (1990); to upholding as constitutional the amendment to the DUI statute permitting the state to administer replicate breath tests without preserving a sample, *Moss v. Superior Court,* 175 Ariz. 348, 857 P.2d 400 (App.1993).

¶ 14 On the other hand, and regardless of whether the state has invoked the provisions of the implied consent statute, a DUI suspect has a separate and distinct due process right to obtain an independent test at the suspect's own expense to refute the state's evidence, whether from scientific tests or otherwise. That right derives from the evanescent nature of the scientific evidence that a person is under the influence of intoxicating liquor. *Montano.* Although it is a constitutional due process right, *Smith v. Cada,* 114 Ariz. 510, 562 P.2d 390 (App.1977), it is codified in former § 28–692(H), now § 28–1381(M), which was adopted at the same time as the implied consent law. 1969 Ariz. Sess. Laws, ch. 41, §§ 1 and 2. The right, however, is a limited one. Indeed, although law enforcement officers normally advise a DUI suspect that he or she has the right to an independent test, *Montano; State v. Vannoy,* 177 Ariz. 206, 866 P.2d 874 (App.1993), officers are only required to do so if they do not invoke the implied consent law to test the suspect's BAC. *Montano; Vannoy; State v. Miller,* 161 Ariz. 468, 778 P.2d 1364 (App.1989). Moreover, law enforcement officers need not so advise a DUI suspect who refuses to submit to a test, *State v. Ramos,* 155 Ariz. 153, 745 P.2d 601 (App.1987), or who provides a deficient breath sample. *Vannoy.* What officers must do, instead, is give a DUI suspect a "reasonable opportunity to arrange for" a test or tests by a qualified person of the suspect's choice "in addition to any [test] administered at the direction of a law en-

forcement officer." Former § 28–692(H), now § 28–1381(M). The statute also provides, however, that "[t]he failure or inability to obtain an additional test by a person does not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer." *Id.*

¶ 15 Because "[t]he state has no obligation ... to actually gather evidence for a suspect," *Montano,* 149 Ariz. at 391, 719 P.2d at 277, the state need not concern itself with matters such as the reliability of a suspect's independent test. Reliability is a due process issue only with respect to the state's testing. What the state may not do, however, is unreasonably interfere with a suspect's opportunity to obtain an independent test by holding a suspect incommunicado for the crucial period during which the suspect's alcohol, if any, dissipates, *State ex rel. Webb v. Tucson City Court,* 25 Ariz.App. 214, 542 P.2d 407 (1975); ignoring a suspect's request to post bail while knowing the suspect has sufficient immediately available funds to do so, *Smith v. Cada;* unduly delaying a suspect's posting bail for release to obtain an independent test, *Smith v. Ganske;* or refusing to allow a suspect in custody to contact an attorney to arrange for an independent test. *McNutt v. Superior Court,* 133 Ariz. 7, 648 P.2d 122 (1982).

¶ 16 Viewing *Sanchez* in the context of the panoply of DUI case law, we clarify that the due process violation in that case was testing Sanchez on a machine the state had known for two months was unreliable in determining BAC. Giving him the test on that machine, therefore, violated the state's obligation to use a reasonably accurate testing device. The right violated was not, as we inadvertently said in *Sanchez,* offering Sanchez "a flawed breath test, with no sample preserved." 192 Ariz. 454, ¶ 7, 967 P.2d 129, ¶ 7. As noted above, under former § 28–692(G), now. § 28–1381(L), upheld in *Moss* as constitutional, a law enforcement officer is not required to preserve a sample if the officer "administers a duplicate breath test" and gives the suspect "a reasonable opportunity to arrange for an additional test." Although we did not clearly differentiate the terms "independent sample" and "independent test"

in *Sanchez,* the two are distinct. Because Sanchez had no "right" to an independent sample, the due process violation there was the state's bad faith in knowingly testing his breath on an unreliable machine.

¶ 17 Unlike *Sanchez,* the defendants' due process rights in this case were violated by the state's testing their breath on a machine the state later learned was unreliable. Because the state has conceded that the machine was not reliable, the defendants could not have made an informed choice about submitting to a breath test or refusing a test and subjecting themselves to suspension of their driver's licenses. Therefore, we must consider the appropriate remedy for the state's due process violation.

### APPROPRIATE REMEDY

■ ¶ 18 We first note that none of the parties in these cases stipulated that the state knew at the time the police officers administered the defendants' breath tests on the RBT–IV that the machines were unreliable. Mack argues that the parties' stipulation that, at the time of her test in February 1997, the RBT–IV was an unreliable instrument for determining BAC is equivalent to a stipulation that the state knew at that time that the machine was unreliable. Neither Mack's nor Marmion's stipulation of facts, nor anything else in the records before us cites a date on which the state knew the machine was unreliable. In fact, the records in the three cases before us do not support the March 1997 date the trial court in *Sanchez* found as the date by which the state knew, as opposed to *was investigating whether,* the machine was unreliable.

■ ¶ 19 Although the petition in *Mack* lists twenty-five "facts" about the Intoximeter RBT–IV, the source cited for those facts is an attached transcript of a consolidated hearing held over seven days between December 1997 and May 1998 before a different city court magistrate in a number of unrelated cases. The parties in *Marmion* also apparently stipulated that the testimony of several named witnesses would be as shown in that transcript. We have not cited any facts from that transcript nor addressed any arguments based on them, however, because the

transcript merely contains the testimony given. No magistrate in any of these three cases entered findings of fact or conclusions of law based on the testimony in the transcript, and we cannot take judicial notice of the truth of any testimony given. *In re Ronwin,* 139 Ariz. 576, 680 P.2d 107 (1983). Moreover, the stipulation of facts in *Marmion* states only that the witnesses would testify as shown in the transcript; that stipulation does not address the truth of any of that testimony. Finally, we have not been provided a copy of any ruling the magistrate entered after the consolidated hearing to which the transcript relates; therefore, we do not know what testimony the magistrate found credible.

¶ 20 Among the numerous Arizona DUI cases in which a due process violation has been found that relates to breath testing, only two have held that dismissal of the (A)(1) charge was required in addition to dismissal of the (A)(2) charge, *Sanchez* and *Amos v. Bowen,* 143 Ariz. 324, 693 P.2d 979 (App.1984). In the others, although the courts found that the state had violated the defendants' due process rights, they also found that suppression of the breath test results and dismissal of only the (A)(2) charges were sufficient sanctions for the violation. *Oshrin v. Coulter,* 142 Ariz. 109, 688 P.2d 1001 (1984) (suppression of test results and dismissal of (A)(2) charge constituted proper sanctions for due process violation in telling defendant charges had been dropped, so he did not have sample tested, and then refiling charges months later); *Scales v. Mesa City Court,* 122 Ariz. 231, 594 P.2d 97 (1979) (destruction of breath samples violated holding of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), but required only suppression of test results); *Vannoy* (state's failure to preserve defendant's deficient breath sample and introduction of test results at trial required new trial with suppression of results); *Harrison,* 157 Ariz. at 185, 755 P.2d at 1173 (state's providing defendant "inherently" unreliable second sample required suppression of test results and dismissal of (A)(2) charge, not (A)(1) charge); *State v. Tucson City Court,* 130 Ariz. 285, 635 P.2d 878 (App.1981) (state's

failure to preserve breath sample required suppression of test results, not dismissal of charges).

¶ 21 In *Amos,* this court found that the state had unreasonably interfered with the defendant's right to obtain an independent blood test for potentially exculpatory purposes. Amos had requested an independent blood test after he submitted to the state's breath test. Although the police officer who arrested Amos was not obligated to obtain evidence for him, *see Montano,* the officer voluntarily undertook to transport Amos to a hospital for the test before taking him for a prebooking release interview in a conscientious attempt to make certain Amos's rights were honored. The officer was unavoidably detained for two hours, however, handling an assault he had seen on the way to the hospital. The defendant then decided not to take the blood test. The reasonable inference from the facts recited in the decision is that the officer could have radioed for another officer to take Amos to the hospital, but failed to do so. Although we noted the officer had properly stopped to end the assault, we also held that his doing so had unreasonably interfered with the defendant's right to secure an independent blood sample for exculpatory purposes. And, we concluded that the proper remedy for that unreasonable interference was dismissal of both charges.

¶ 22 We reached the same conclusion in *Sanchez,* primarily, as noted above, because of the trial court's implicit finding that the state had acted in bad faith in asking Sanchez to submit to a breath test on a machine with a faulty repair record while knowing that the machine was unreliable. As a result, we agreed with the trial court there that the state's knowing interference with Sanchez's right to a reasonably accurate test required dismissal of the (A)(1) charge.

¶ 23 Unlike *Sanchez,* none of the cases here involves either an explicit or implicit finding of bad faith. In fact, in initially denying Hawkins's motion to dismiss, the magistrate entered extensive findings expressly rejecting Hawkins's contention that the actions of the state constituted bad faith. In later granting the motion to dismiss, the magistrate simply relied on our holding in

*Sanchez.* Moreover, contrary to Hawkins's assertion, the magistrate did not make a finding as to the state's knowledge. The footnote in her order, entered in a number of consolidated cases, merely summarized the defendants' argument on that issue. Similarly, the magistrates' orders dismissing the (A)(1) charges against Mack and Marmion were based solely on this court's decision in *Sanchez.*

¶ 24 Not only are there no findings in any of these three cases that the state acted in bad faith, *Sanchez,* or unreasonably interfered with the defendants' rights, *Amos,* there is also no evidence the state was on notice that the machines were unreliable at the time of these defendants' tests. In addition, even when the supreme court did find that the state had acted in bad faith in telling a defendant the charges had been dismissed and then refiling them months later, the court held that the appropriate remedy was dismissal of the (A)(2) charge and suppression of the breath test results in the trial of the (A)(1) charge. *Oshrin.* In the cases before us, the (A)(2) charges have been dismissed, and the state has agreed not to use the test results for any purpose. The records before us contain neither any clear evidence nor any court finding that the state knew at the time these defendants submitted to breath testing on the Intoximeter RBT–IV that the machine was unreliable. In the absence of any evidence or finding that the state unreasonably interfered with the defendants' rights, no further sanction beyond dismissal of the (A)(2) charge and suppression of the breath test results is necessary.

¶ 25 As a result, we reject Hawkins's assertion that the state's use of an unreliable breath-testing device, without more, requires dismissal of the (A)(1) charge. Under the applicable case law, suppression of breath test results and dismissal of the (A)(2) charge is the appropriate sanction for the state's due process violation in using an unreliable primary or secondary testing device or in failing to preserve or properly preserve a test sample. Dismissal of the (A)(1) charge is required, however, only when the state, in addition, unreasonably or knowingly violates a suspect's rights, such as in voluntarily under-

taking to participate in a suspect's obtaining of an independent blood test and then failing to make certain that the suspect obtains it, *Amos,* or in asking a suspect to submit to a breath test on a machine the state knows is unreliable or has a faulty repair record. *Sanchez.*

¶ 26 We therefore conclude that the respondent judge in *Mack* and *Marmion* correctly refused to dismiss the (A)(1) charge and that the respondent judge in *Hawkins* incorrectly applied *Sanchez* in affirming the magistrate's dismissal of that charge. Accordingly, we deny relief in *Mack* and *Marmion* and grant relief in *Hawkins.* The dismissal order in *Hawkins* is vacated, and the cases are remanded for further proceedings consistent with this decision.

CONCURRING:   JOHN PELANDER, Presiding Judge, and WILLIAM E. DRUKE, Judge.