61 P.3d 475

**STATE of Arizona, Appellant,**

v.

**Peter OLCAN, Appellee.**

No. 1 CA–CR 01–1069.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 28, 2003.

Richard M. Romley, Maricopa County Attorney, By Linda Van Brakel, Deputy County Attorney, Phoenix, Attorneys, for Appellant.

Law Office of Weingart & Penrod By Todd K. Coolidge, Tempe, Attorney for Appellee.

## OPINION

WEISBERG, Judge.

¶ 1 The State appeals from the trial court's dismissal of two counts of aggravated driving under the influence, class four felonies. *See* Ariz.Rev.Stat. ("A.R.S.") § 28–1383(A)(1) (Supp.2000). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Peter Olcan ("Olcan") was arrested for driving under the influence. Olcan spoke privately with his lawyer and then consented to a blood test. When Olcan asked for the opportunity to have an independent blood sample drawn, a police officer told him that one could be arranged from jail.

¶ 3 Shortly after being transported to the Mesa City Jail, Olcan made repeated requests for an independent blood draw. However, he was not given an opportunity to arrange one. Olcan was later booked into

the county jail and released the following day.

¶ 4 Olcan moved the trial court to dismiss the charges, arguing that the police officers interfered with his ability to arrange for an independent blood draw. Olcan's lawyer read a series of stipulated facts into the record and submitted a written stipulation to the court. The court granted the motion, stating,

> There's nothing in the hearing that we did the other day that would indicate that taking a blood sample at the Mesa City Jail would be unreasonable.
>
> Under the circumstances of this case, the defendant repeatedly asked for an independent blood sample and was never given an opportunity. I don't believe that saving the extra tube complies with the statute because the statute talks about [ ] an independent blood test, not saving a sample of a test that's given.
>
> ... [W]hen somebody requests [an independent blood draw], repeatedly requests it, and when it's reasonable to allow him that opportunity to call his lawyer again and arrange for it, I think you do have to do that. The statute's clear, in my mind.

¶ 5 The State timely appeals, and we have jurisdiction under A.R.S. §§ 12–120.21(A)(1) (1992) and 13–4032(1) (2001).

## DISCUSSION

■ ¶ 6 The State presents two arguments on appeal: first, that a defendant has no statutory right to an independent blood draw when the State has collected and preserved a sample to be tested; and second, that even if there was such a right, the trial court erred in determining that the State denied Olcan a reasonable opportunity to exercise that right. We review the trial court's dismissal of the charges for an abuse of discretion. *See State v. Sanchez*, 192 Ariz. 454, 456, ¶ 4, 967 P.2d 129, 131 (App.1998).

■ ¶ 7 We first consider whether Olcan had a right to seek an independent blood draw. We review the trial court's constitutional and statutory interpretations de novo. *Mack v. Cruikshank*, 196 Ariz. 541, 544, ¶ 6, 2 P.3d 100, 103 (App.1999).

■ ¶ 8 Both parties agree that a defendant has the right to seek a private blood draw if the State does not administer a blood test. This right is derived from a defendant's due process right to gather exculpatory evidence, *Van Herreweghe v. Burke*, 201 Ariz. 387, 389, ¶ 8, 36 P.3d 65, 67 (App.2001), and is codified at A.R.S. § 28–1388(C) (Supp. 2001), which states in part:

> The person tested shall be given a reasonable opportunity to arrange for any physician, registered nurse or other qualified person of the person's own choosing to administer a *test or tests in addition* to any administered at the direction of a law enforcement officer.

(Emphasis added.) However, the State argues that, when police officers have already collected a sample of a defendant's blood, the defendant has no right to an independent blood draw. Instead, the State asserts that the defendant's right is satisfied by allowing him to arrange for an independent analysis of the State's sample. We disagree.

¶ 9 The statute affords a reasonable opportunity to obtain an additional *test*. Such a test may be administered only by a "physician, registered nurse or other qualified person." A.R.S. § 28–1388(C). We recently construed a similar qualifying requirement in the context of A.R.S. § 28–1388(A) (Supp. 2001), which applies to blood tests administered pursuant to the implied consent statute. *See State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, 588, ¶ 20, 30 P.3d 649, 655 (App.2001). In *Pennartz* we held that a "qualified person" for purposes of A.R.S. § 28–1388(A) means someone who is competent to draw blood. *Id.* Although A.R.S. § 28–1388(C) is not limited to blood tests, the import is the same: "qualified person" means someone who knows how to take a proper sample.

¶ 10 Of course, this requirement makes sense only if the *test* spoken of in A.R.S. § 28–1388(C) includes the taking of the sample to be analyzed. Otherwise, a lab technician would be the proper "qualified person" to perform an A.R.S. § 28–1388(C) test. The State attempts to explain this requirement by positing that a defendant is entitled to an

independent blood draw only when the State has not already drawn a sample of the defendant's blood.[1]

■ ¶ 11 But the statute contains no such limitation. In fact, A.R.S. § 28–1388(C) expressly allows a person to have a qualified person administer a test "*in addition* to *any* test" administered by the State. Thus, it grants a defendant a reasonable opportunity to arrange for a competent person to draw an independent sample of the defendant's blood and analyze that sample regardless whether the State has collected, analyzed, and preserved a portion of the defendant's blood. The statute is plain and unambiguous, and we decline to read into it the State's proposed limitation. *See State v. Mahler*, 128 Ariz. 429, 430, 626 P.2d 593, 594 (1981).

¶ 12 The parties also debate whether, in addition to A.R.S. § 28–1388(C), due process guarantees a defendant the right to an independent blood draw. In *State v. Kemp*, our supreme court held:

> [L]aw enforcement officers, when obtaining a blood sample pursuant to [A.R.S. § 28–1388(E)], need not advise the suspect of his right to obtain a portion of the same sample for independent testing, at least when the sample taken by law enforcement officers will still be available for testing by the defendant at the time of trial.

168 Ariz. 334, 336–37, 813 P.2d 315, 317–18 (1991). The court noted, however, that "if a defendant affirmatively requests a separate blood sample for independent testing, law enforcement officials may not interfere with his efforts to obtain such a sample." *Id.* at 337 n. 4, 813 P.2d at 318 n. 4 (citing *Amos v. Bowen*, 143 Ariz. 324, 327–28, 693 P.2d 979, 982–83 (App.1984)). The court thereby clarified that a "portion of the same sample" is what the defendant receives from the State, whereas a "separate blood sample" is what

the defendant receives from an independent blood draw. *Kemp* therefore suggests that due process guarantees a defendant a reasonable opportunity to obtain an independent blood draw even when the State has collected a blood sample and preserved a portion for inspection.

¶ 13 However, we need not reach this constitutional issue because A.R.S. § 28–1388(C) suffices. On its face, A.R.S. § 28–1388(C) provides the right to seek an independent blood draw and it does not limit that right to situations in which the State has not already obtained a sample. Accordingly, the trial court did not err.

■ ¶ 14 Next, the State argues that it did not deny Olcan a reasonable opportunity to obtain an independent blood test. *Van Herreweghe*, 201 Ariz. at 389–90, ¶ 8, 36 P.3d at 67–68. "The difficulties of obtaining an independent test do not violate a defendant's rights if those difficulties are not created by the State." *Id.* at 390, ¶ 10, 36 P.3d at 68.

■ ¶ 15 In this case, the State has stipulated away its argument that it did not unreasonably interfere with Olcan's right. When Olcan's lawyer read the written stipulations into the record, he stated that Olcan was denied the opportunity to have an independent blood draw. The State did not object. Although the State claims on appeal that this statement was the defense lawyer's argument rather than a stipulated fact, the record before us does not bear that out. Furthermore, because the written stipulation itself is not a part of the record on appeal, we must presume that it supports the trial court's determination. *See Ashton–Blair v. Merrill*, 187 Ariz. 315, 317, 928 P.2d 1244, 1246 (App.1996).

¶ 16 Thus, the State's arguments that Olcan should have asked specifically to use the phone to arrange an independent blood draw,

---

1. The State claims that construing the statute in such a way makes sense because there is no conceivable justification for allowing a defendant to seek an independent blood draw when the State has collected and preserved a sample. But we can conceive of two: the State's vials might be tainted, or the blood draw may have been performed incorrectly. *See* Jefferson Lankford, *Arizona DUI: A Manual for Police, Lawyers, and Judges* 60 (2001–02) ("Care should be taken not to use an alcohol swab in preparing the area from which blood is to be drawn.... Scientific guidelines exist for taking, preserving, and testing blood samples for alcohol.") (footnote omitted). Of course, flaws in the State's evidence might be brought to light through normal discovery devices. *See State v. Fields*, 196 Ariz. 580, 583, ¶ 9, 2 P.3d 670, 673 (App.1999).

or that Olcan's lawyer should have arranged one, will not be considered. The State stipulated that Olcan was denied the opportunity to exercise his alleged right to an independent blood draw. The trial court, therefore, did not err in dismissing the charges.

### CONCLUSION

¶ 17 For the foregoing reasons, we affirm the trial court's dismissal of the charges.

CONCURRING: WILLIAM F. GARBARINO, Judge, and E.G. NOYES, JR., Judge.