NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

_____

STATE OF ARIZONA, *Appellee,*

*v.*

DANIEL WAYNE HERSUM, *Appellant.*

No. 1 CA-CR 13-0188
FILED 03/11/2014

_____

Appeal from the Superior Court in Yavapai County
No.  P1300CR20090946
The Honorable Cele Hancock, Judge

**AFFIRMED**

_____

COUNSEL

Arizona Attorney General's Office, Phoenix
By  Terry M. Crist
*Counsel for Appellee*

Vingelli & Company Law Offices, P.L.L.C., Scottsdale
By  John N. Vingelli
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Michael J. Brown joined.

**D O W N I E**, Judge:

¶1            Daniel Wayne Hersum appeals his convictions for nine criminal offenses arising out of a driving under the influence ("DUI") incident near Prescott.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**[1]

¶2            Department of Public Safety Officer Mitchell responded to a highway accident scene in the evening hours of May 16, 2009.  Hersum's vehicle was in the middle of the roadway with heavy front-end damage. Hersum was in the driver's seat.  His eyes were bloodshot and watery, and Mitchell detected "an overwhelming smell of alcohol coming out of the car as [Hersum] spoke."  Hersum said he had consumed two beers and a shot of alcohol.  With Hersum's consent, Mitchell administered an HGN test; Hersum exhibited all six cues of impairment.  While the officer was speaking with Hersum, a passing motorist (D.M.) slammed on her brakes, skidded into the accident scene, and "tapped" Hersum's vehicle.

¶3            Witnesses advised Mitchell that they saw Hersum's car driving in the median before becoming airborne and continuing in the wrong direction on the other side of the highway.  Immediately thereafter, two semi-trucks driving beside each other "split to the shoulders" to avoid colliding with Hersum, who was driving toward them "pretty fast." A witness related that a yellow pickup truck was behind one of the semi-trucks, and when they took evasive action, Hersum crashed head-on into the pickup.

¶4            Paramedics extricated the driver of the yellow pickup truck (M.H.), who was seriously injured.  Paramedics also treated Hersum at the

---

[1]      We review the facts in the light most favorable to sustaining the verdicts.  *See State v. Guerra,* 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

scene before transporting him to a hospital. Officer Mitchell obtained two vials of Hersum's blood from the paramedics. Subsequent testing revealed a BAC exceeding .240%. Hersum was charged with:

> Count I: aggravated assault, a class 3 felony (victim M.H.: serious physical injury);
>
> Count II: aggravated assault, a class 3 felony (victim M.H.: use of a deadly weapon or dangerous instrument);
>
> Count III: reckless endangerment, a class 6 felony (victim D.M.);
>
> Count IV: reckless endangerment, a class 6 felony ("unidentified motorists");
>
> Count V: criminal damage, a class 4 felony;
>
> Count VI: criminal damage, a class 6 felony;
>
> Count VII: DUI (BAC $\geq$ .20), a class 1 misdemeanor;
>
> Count VIII: DUI (impaired driving), a class 1 misdemeanor; and
>
> Count IX: DUI (BAC $\geq$ .08), a class 1 misdemeanor.

**¶5** Hersum moved to suppress the BAC results and dismiss the DUI counts, arguing the warrantless seizure of his blood was unconstitutional. After an evidentiary hearing, the trial court denied the motions. The court also denied Hersum's pretrial motion to dismiss Count IV based on the State's failure to specifically identify the alleged victims of that count, as well as a Rule 20, Arizona Rules of Criminal Procedure, motion made during trial on the same grounds.

**¶6** The jury found Hersum guilty as charged. He was sentenced to concurrent and consecutive prison terms. Hersum timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

### I.      Motion to Suppress Blood Test Results

¶7          In reviewing the denial of a motion to suppress, we review only the evidence submitted at the suppression hearing, and we consider that evidence in the light most favorable to upholding the trial court's ruling. *State v. Blackmore*, 186 Ariz. 630, 631, 925 P.2d 1347, 1348 (1996); *State v. Box*, 205 Ariz. 492, 493, ¶ 2, 73 P.3d 623, 624 (App. 2003). Although we defer to the trial court's factual determinations, we review *de novo* its ultimate legal conclusions. *Box*, 205 Ariz. at 495, ¶ 7, 73 P.3d at 626.

¶8          "The drawing of blood is a bodily invasion and, thus, constitutes a search under the Fourth Amendment." *State v. Estrada*, 209 Ariz. 287, 290, ¶ 11, 100 P.3d 452, 455 (App. 2004). "To comply with the Fourth Amendment's requirement that searches be reasonable, the police may obtain a suspect's blood sample if 1) they obtain a search warrant founded on probable cause; 2) the suspect consents . . . expressly . . . or implicitly to the blood draw . . .; or 3) exigent circumstances exist and the police have probable cause to believe the person violated the DUI statute." *Id.*; *accord* A.R.S. § 28-1388(E) (allowing law enforcement officer with probable cause to take portion of blood sample collected by another); *State v. Cocio*, 147 Ariz. 277, 283-84, 709 P.2d 1336, 1344-45 (1985) (noting U.S. Supreme Court has held "a blood sample may be taken without a search warrant if it is taken in a medically approved manner and based on probable cause to believe the person is intoxicated").

¶9          The trial court found that Hersum "consented to the law enforcement blood sample obtained by Officer Mitchell." It further concluded that "[t]he law enforcement blood sample was procured in compliance with A.R.S. §28-1388 (E)." The record supports these determinations.

¶10          Joshua Groves, a paramedic with the Prescott Fire Department, testified that he advised Hersum he was "going to start an IV and do a medical blood draw," to which Hersum agreed. Groves then testified as follows:

> Q.  Okay.  Let's break that down a little bit.  You're going to start an IV as per protocol?
>
> A.  Correct.

4

Q. Part of this is you already testified, correct me if I'm wrong, was drawing blood?

A. For medical purposes.

Q. Okay. How did DPS enter this scene of drawing blood?

A. While I was doing my medical draw, I believe it was a state officer was standing there with his blood draw kit, asked me if I would mind doing a medi –- or a draw for him.

I asked Mr. Hersum and pointed to the officer. I said, "That officer right there wants me to do a draw for him. Do you mind?"

And he said he had no problem with it.

Q. Do you remember or more exact words?

A. I believe it was something on the nature of go ahead. Go for it. Yeah.

Q. Would that be an affirmative response?

A. He gave consent.

¶11        In testifying about the reason for the medical blood draw, Groves testified that a head-on collision at a high rate of speed is "considered a level one trauma which is an automatic IV and blood draw." Hersum had advised Groves that he lost consciousness, and Groves was concerned about blunt trauma, intracranial pressure, internal bleeding, and a possible broken rib. Paramedic Robert Rendl agreed with Groves, testifying there were "a multitude of reasons why a blood sample would be taken on scene," and stating:

Not knowing what the cause of injury was to begin with, with the blood sample that we drew on scene can be evaluated with a later sample drawn at the hospital. They can compare different like saturation levels. They can differentiate with the muscles break as it relates to different enzymes in the blood. They can tell muscle damage progressing or staying the same.

¶12            Officer Mitchell testified that he saw paramedics preparing an IV and "asked Mr. Groves if he was going to be drawing for medical purposes." When Groves responded affirmatively, Mitchell stated that he also needed a blood sample and gave Groves two vials.

¶13            The evidence from the suppression hearing supports the trial court's finding that Hersum consented to the law enforcement blood draw. Nothing in the record suggests that the paramedics were acting as Officer Mitchell's "agents," as Hersum contends. Rather, the evidence established that the paramedics' treatment, including the IV and blood draw, followed established medical protocols.

¶14            Hersum's reference to the paramedics' "mistaken . . . recollections" and his recitation of conflicting evidence does not compel a contrary conclusion. In resolving suppression motions, "the trial court, not this Court, determines the credibility of the witnesses." *State v. Estrada,* 209 Ariz. 287, 288, ¶ 2, 100 P.3d 452, 453 (App. 2004). It is not the appellate court's role to reweigh the evidence. *See State v. Tison,* 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981).

¶15            The record also establishes the propriety of the law enforcement blood draw under A.R.S. § 28-1388(E). That statute provides, in pertinent part:

> Notwithstanding any other law, if a law enforcement officer has probable cause to believe that a person has violated § 28-1381 and a sample of blood, urine or other bodily substance is taken from that person for any reason, a portion of that sample sufficient for analysis shall be provided to a law enforcement officer if requested for law enforcement purposes.

*See also Cocio*, 147 Ariz. at 284, 709 P.2d at 1345 (under predecessor statute, requirements for medical exception are: 1) probable cause to believe the person committed DUI; 2) exigent circumstances; and 3) "the blood is drawn for medical purposes by medical personnel").

¶16            The trial court found that "a blood draw for medical purposes was performed in this case." That finding is supported by the evidence discussed *supra*. Based on Officer Mitchell's observations of Hersum, the results of the HGN test, Hersum's admissions, and eyewitness accounts of the accident, the officer clearly had probable cause to believe that Hersum had driven under the influence. *See State v. Emery*, 131 Ariz. 493, 506, 642 P.2d 838, 851 (1982) ("[P]robable cause has been

defined as such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a *strong* suspicion of guilt."); *see also State ex rel. McDougall v. Superior Court (Bolton & Sutton)*, 191 Ariz. 182, 183-84, 186, 953 P.2d 926, 927-28, 930 (App. 1997) (indicia of intoxication, coupled with citizen input regarding erratic driving, were sufficient to establish probable cause for DUI). Finally, exigent circumstances existed to draw blood without a warrant because the alcohol in Hersum's system was dissipating. *See Cocio*, 147 Ariz. at 284, 709 P.2d at 1345 ("The highly evanescent nature of alcohol in the defendant's blood stream guaranteed that the alcohol would dissipate over a relatively short period of time.").

¶17         Hersum next asserts that Officer Mitchell was required to inform him of his right to obtain independent blood testing. We disagree.[2]

¶18         In discussing a predecessor statute to A.R.S. § 28-1388(E), our supreme court held "that law enforcement officers, when obtaining a blood sample pursuant to A.R.S. § 28-692(M), need not advise the suspect of his right to obtain a portion of the same sample for independent testing, at least when the sample taken by law enforcement officers will still be available for testing by the defendant at the time of trial." *State v. Kemp*, 168 Ariz. 334, 336-37, 813 P.2d 315, 317-18 (1991); *see also State v. Olcan*, 204 Ariz. 181, 184, ¶ 12, 61 P.3d 475, 478 (App. 2003). The State argued in the trial court that the law enforcement blood sample remained available for

---

[2]         As Hersum concedes, "[w]hether a citizen is under arrest is not material for purposes of advising of the right to an independent test." He nonetheless argues for the first time on appeal that he was under "technical" arrest. It is not clear whether Hersum is contending the blood draw under A.R.S. § 28-1388(E) was improper because of a "technical" arrest, whatever that may be. At any rate, we do not consider arguments raised for the first time on appeal, *see State v. Gatliff*, 209 Ariz. 362, 364, ¶ 9, 102 P.3d 981, 983 (App. 2004), or arguments posited without authority, *see Cullum v. Cullum*, 215 Ariz. 352, 355 n.5, ¶ 14, 160 P.3d 231, 234 n.5 (App. 2007). Moreover, nothing in the record suggests Hersum was under arrest when his blood was drawn. He was not subject to a traffic stop, was not handcuffed, did not receive *Miranda* warnings, and was not accompanied to the hospital by law enforcement. *Cf. State v. Rowland*, 172 Ariz. 182, 184, 836 P.2d 395, 397 (App. 1992) (indicia of arrest when DUI suspect was handcuffed, repeatedly given *Miranda* warnings, and taken to the hospital without his consent).

independent testing by Hersum, and nothing in the record refutes this claim.[3]

**¶19** A DUI suspect has a due process right to gather exculpatory evidence. Due process, though, requires only that a defendant be given a reasonable opportunity to obtain exculpatory evidence. "Police officers are not required to take the initiative or even assist in procuring any evidence on behalf of a defendant." *State v. Storholm*, 210 Ariz. 199, 201, ¶ 14, 109 P.3d 94, 96 (App. 2005) (internal quotation marks omitted). And while the State may not unreasonably interfere with a defendant's right to obtain exculpatory evidence, there is no evidence suggesting that law enforcement did so here. *See, e.g., Amos v. Bowen*, 143 Ariz. 324, 327-28, 693 P.2d 979, 982-83 (App. 1984) (officer volunteered to transport defendant to hospital but delayed trip by two hours); *McNutt v. Superior Court (Strick)*, 133 Ariz. 7, 9, 648 P.2d 122, 124 (1982) (police refused to honor request to telephone attorney).

**¶20** The trial court did not err in denying Hersum's motion to suppress.

## II. Motion to Dismiss Count IV

**¶21** The State charged Count IV as follows:

> On or about May 16, 2009, **DANIEL WAYNE HERSUM**, recklessly endangered *unidentified motorists* on Highway 89A Eastbound near MP 321, with a substantial risk of imminent death, using a dangerous instrument, to-wit: a vehicle, in violation of A.R.S. §§ 13-1201 and 13-704, a class 6 felony.

(Emphasis added.)

**¶22** Hersum contends the court should have dismissed Count IV because the reference to "unidentified motorists" is insufficient under double jeopardy principles. We conclude otherwise.

**¶23** "A person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or

---

[3] Hersum's reliance on records from the Yavapai Regional Medical Center is unavailing. Those records simply report what the hospital possessed, not what was in the possession of law enforcement.

physical injury." A.R.S. § 13-1201(A).  In addressing this statute, we have held that it "does not require or imply that the name or exact identity of the victim is a necessary element of the offense."  *State v. Villegas-Rojas*, 231 Ariz. 445, 447, ¶ 8, 296 P.3d 981, 983 (App. 2012).  The circumstances of Hersum's reckless driving, including the time and location of the incident, were fully developed in the trial court, and the record is sufficient to bar any subsequent action that might be filed against him for the same offense involving the same victims. *See State v. Lombardo*, 104 Ariz. 598, 599, 457 P.2d 275, 276 (1969) ("fully developed" information would bar subsequent action filed against defendant for same offense); *see also State v. Barber*, 133 Ariz. 572, 578, 653 P.2d 29, 35 (App. 1982) ("A double jeopardy defense is not limited to the four corners of the indictment.").   The court did not err in refusing to dismiss Count IV.

## III.    Jury Instruction

**¶24**        Finally, Hersum contends his conviction on Count III must be vacated because the trial court failed to give his requested jury instruction regarding superseding cause.  We disagree.

**¶25**        The trial court made a pretrial ruling that Hersum caused the initial crash and that it was foreseeable there could be a "chain reaction of other crashes."  During trial, the court refused to instruct the jury that cause for an injury is broken by a superseding intervening event that was unforeseeable and, with the benefit of hindsight, may be described as abnormal or extraordinary.

**¶26**        The record supports the trial court's ruling.  Hersum's criminal conduct clearly created the risk that a passing motorist such as D.M. would collide with a disabled vehicle in the roadway.   An intervening event is not a superseding cause if "the original actor's negligence create[d] the very risk of harm that causes the injury" or "the defendant's conduct 'increases the foreseeable risk of a particular harm occurring through . . . a second actor.'"  *State v. Slover*, 220 Ariz. 239, 244, ¶ 11, 204 P.3d 1088, 1093 (App. 2009).  This is true *even if* the second actor acts negligently.  *See Rodgers ex rel. Standley v. Retrum*, 170 Ariz. 399, 402, 825 P.2d 20, 23 (App. 1991) ("inherent in the risk of vehicular injury is the prospect of an intervener's negligent or reckless driving of a car"); *State v. Vandever*, 211 Ariz. 206, 208, ¶¶ 6, 8, 119 P.3d 473, 475 (App. 2005) (in trial for endangerment from drunk driving, evidence victim was speeding did not warrant superseding cause instruction; victim's negligent driving "was clearly a foreseeable event within the scope of the risk created" by the defendant's reckless driving).

¶27        A superseding cause instruction was not appropriate given the facts of this case, and the trial court properly refused to give it.

**CONCLUSION**

¶28        For the reasons stated, we affirm Hersum's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: gsh